TAYLOR, APPELLANT, *v.* MULTI-FLO, INC., APPELLEE.

(No. C-790338—Decided July 9, 1980.)

*Mr. Dennis A. Becker,* for appellant.

*Coolidge, Wall, Matusoff, Womsley & Lombard Co., L.P.A.,* and *Mr. James R. Levinson,* for appellee.

*Per Curiam.* This cause came on to be heard upon an appeal from the Hamilton County Municipal Court.

In August of 1975, plaintiff-appellant, John Taylor, purchased a sewage treatment system, designed and manufactured by defendant-appellee, Multi-Flo, Inc., from an Indiana plumbing company. The system was installed by the seller at Taylor's residence in Harrison, Ohio. In October of 1975, Taylor began to experience difficulties with the operation of the system and demanded maintenance from Multi-Flo pursuant to warranty. Service and repairs were performed by three different companies over a period of time from October of 1975 until the spring of 1979 at no cost to Taylor. On August 3, 1979, Taylor filed suit against Multi-Flo, alleging that "the system was defective and has been so since installation and [Taylor] is faced with having to replace the system." Money damages were demanded. After answers to interrogatories were completed by both parties, Multi-Flo filed a motion for summary judgment, which was granted by the trial court. Taylor now appeals to this court.

Two assignments of error are presented, both of which challenge the summary judgment which was granted on the

basis that the action was governed by R. C. 2305.10, a two-year statute of limitations. Taylor argues that the sewage treatment system is a fixture, is therefore classified as real property, and, as such, does not come within the ambit of R. C. 2305.10. Multi-Flo contends that Taylor placed no evidence in the record to substantiate a claim that the system in question is a fixture rather than personal property.

Although the complaint does not propound a theory of recovery, the allegation that the system is defective brings the action within the scope of the law of products liability.[1] The Supreme Court, in *Lonzrick* v. *Republic Steel Corp.* (1966), 6 Ohio St. 2d 227, 229-230, listed three possible causes of action which a plaintiff in such a case may pursue: (1) an action in tort grounded upon negligence; (2) an action in contract; "(3) [a]n action in tort***based upon the breach of a duty assumed by the manufacturer-seller of a product***by reason of his implicit representation of good and merchantable quality and [the product's] fitness for [its] intended use***." The first two causes of action are inapplicable in the case *sub judice* because no negligence is alleged and no contract existed between the parties. Therefore, the plaintiff's case must rest on the manufacturer's implied warranty. No personal injury is alleged, so the case falls into the line of injury-to-property cases such as *Inglis* v. *American Motors Corp.* (1965), 3 Ohio St. 2d 132 (defects in automobile caused pecuniary loss to plaintiff), and *Iacono* v. *Anderson Concrete Corp.* (1975), 42 Ohio St. 2d 88 (defective concrete in plaintiff's driveway).

At that time in question, R. C. 2305.10 provided:

"An action for bodily injury or injuring personal property shall be brought within two years after the cause thereof arose."

The issue for our decision is whether the sewage treatment system is properly classified as personal property—and thus subject to the two-year statute of limitations—or as a fixture, and therefore real property, subject to a different statute of limitations.

---

[1] There was no contract of sale between Taylor and Multi-Flo since the system was purchased from the plumbing company. Therefore, the provisions of the Uniform Commercial Code—specifically R. C. 1302.98 with its four-year statute of limitations—have no application in the instant case. *U. S. Fidelity & Guaranty Co.* v. *Truck & Concrete Equip. Co.* (1970), 21 Ohio St. 2d 244.

*Zangerle* v. *Standard Oil Co. of Ohio* (1945), 144 Ohio St. 506, 514, citing the leading case, *Teaff* v. *Hewitt* (1853), 1 Ohio St. 511, provides the following criteria for a fixture:

"\*\*\*(1) [a]ctual annexation to the realty or something appurtenant thereto; (2) appropriation to the use or purpose of the realty with which it is connected; and (3) the intention of the party making the annexation to make the article a permanent accession to the freehold.\*\*\*"

Multi-Flo, in its brief, frames the issue for us as follows:

"Where defendant-appellee manufactured a unit which is personal property, it is presumed to remain personal property, so that the unit does not have the legal properties of a fixture unless it affirmatively appears from the record properly before the court that those positive acts took place which changed the legal qualities of the unit into those of a fixture."

The complaint relates the purchase of the system and avers that "such system was subsequently installed\*\*\*." Plaintiff's interrogatories to defendant contain the following as Interrogatory No. 13:

"Describe the installation process of a Multi-Flo system.

"*Answer* [by Multi-Flo]: Multi-Flo system is taken to the jobsite by our distributor to the installer. Hole is dug by the installer; base is leveled with sand. Multi-Flo unit is lowered into hole and leveled properly. Installer is responsible for hooking inlet and outlet lines, and installing the wiring system from the aerator to the alarm box. Installer backfills around the system."

In defendant's interrogatories to plaintiff, Interrogatory No. 11 asks the nature of the services performed during the service calls. Plaintiff's answers include "slug [*sic*—probably sludge] and mud in tank." We believe that these answers to interrogatories provide sufficient indicia of the product being installed in the ground and hooked up to the requisite outlets in Taylor's house to raise a genuine issue of fact regarding annexation to the realty. The answers to other interrogatories indicate that the system was in fact appropriated to the use of the realty. Its failure to perform this use properly over a three-year period is the gist of the complaint and the subject of several interrogatories.

The third requisite for a fixture—"the intention of the party making the annexation to make the article a permanent

accession" *Zangerle, supra,* at 514—may, according to *Teaff* v. *Hewitt, supra,* at 530, be "***inferred from the *nature* of the article affixed, the *relation* and *situation* of *the party* making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made" (emphasis *sic*). In the instant case, Taylor, the owner of the realty, added a sewage treatment system to his residence by installing it in the ground. One may reasonably infer that a homeowner makes an annexation of this nature intending it to be a permanent part of his property. We find apt the following language from *Adcor Realty Corp.* v. *Mellon-Stuart Co.* (N.D. E.D. Ohio 1978), 450 F. Supp. 769, 770, a case in which the plaintiffs sought recovery for defective bricks:

"There is no doubt that the bricks in issue were personalty until such time as they were incorporated into the building. Rather than viewing plaintiff's unilateral action in affixing an item of personalty to realty as the sole controlling factor in determining the nature of this action, it must be kept in mind that this type of products liability action is grounded in tort upon alleged failure of a seller to fulfill its duty to provide a product fit for its intended use. *Lonzrick* v. *Republic Steel Corp., supra.* The intended use of bricks is generally to build structures affixed to realty."

Similarly, the intended use of a sewage treatment system is to be affixed to a building to provide a means of disposing of sewage.

We hold that summary judgment was improperly granted because the answers to interrogatories raise a genuine issue of material fact as to whether the system is personal property or a fixture. If the court, on remand, should find the system to be a fixture, then the court would be governed by either the statute of limitations to be applied to a products liability action for injury to real property, *i.e.,* R. C. 2305.09(D),[2] which pre-

---

[2] R. C. 2305.09 provides in pertinent part:

"An action for any of the following causes shall be brought within four years after the cause thereof accrued:

"(A) For trespassing upon real property;

"(B) For the recovery of personal property, or for taking or detaining it;

"(C) For relief on the ground of fraud;

"(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, inclusive, 2305.14 and 1304.29 of the Revised Code."

scribes a four-year period, or R. C. 2305.14,[3] which prescribes a ten-year period. *Adcor Realty Corp., supra,* at 770-771. The complaint herein was filed within four years from the accrual of the cause of action; so it is unnecessary to decide which statute should be controlling.

Accordingly, we reverse the judgment of the trial court and remand the cause for further proceedings according to law.

*Judgment reversed*
*and cause remanded.*

PALMER, P. J., KEEFE and BLACK, JJ., concur.

---

[3] R. C. 2305.14 provides:

"An action for relief not provided for in sections 2305.04 to 2305.131, inclusive, and section 1304.29 of the Revised Code, shall be brought within ten years after the cause thereof accrued. This section does not apply to an action on a judgment rendered in another state or territory."