WESTFIELD INSURANCE COMPANY et al., Appellants,

v.

HULS AMERICA, INC. et al., Appellees.

WESTFIELD INSURANCE COMPANY et al., Appellants,

v.

HULS AMERICA, INC. et al., Appellees,

UAP Columbus J.V.326132 et al., Third–Party Appellants.*

[Cite as *Westfield Ins. Co. v. HULS Am., Inc.* (1998), 128 Ohio App.3d 270.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 97APE09–1173 and 97APE09–1208.

Decided June 9, 1998.

274

276

*Ulmer & Berne, Thomas L. Rosenberg* and *Randall W. Knutti,* for plaintiffs-appellants.

*Porter, Wright, Morris & Arthur, James S. Oliphant, R. Leland Evans* and *Stephanie L. Mott; Pepper, Hamilton & Scheetz, Kenneth H. Zucker* and *Michael Hino,* for defendant-appellee HULS America, Inc.

*Clark, Ward & Cave* and *Douglas J. May,* for third-party defendants-appellants.

JOHN C. YOUNG, Judge.

Appellants appeal from a February 24, 1997 judgment entry of the trial court granting summary judgment in favor of appellee. Plaintiffs–appellants insurance companies Westfield Insurance, Cincinnati Insurance, General Accidents Insurance, Indiana Insurance, State Automobile Insurance and Shelby Insurance (hereinafter collectively "Westfield") were insurers of business tenants of appellant/third-party defendant UAP Columbus J.V. 326132 ("UAP Columbus"), owners of the Lane Avenue Shopping Mall located in Columbus, Ohio. The mall was managed by appellant/third-party defendant Standard Management Company ("Standard"). Appellant-intervening plaintiff Hartford Fire Insurance Company ("Hartford") is an insurer of UAP Columbus (hereinafter appellants UAP Columbus, Standard and Hartford will be collectively referred to as "UAP").

On January 17, 1994, a TROCAL S–60 system roof covering the mall shattered and leaked. The mall tenants were forced to cease doing business for a period of months while repairs were made. The resulting loss of business caused the tenants economic business loss, which Westfield compensated under the tenants' in-force insurance policies. On January 13, 1995, appellants Westfield filed suit in subrogation against the manufacturer/supplier of the TROCAL roof, appellee-defendant HULS America, Inc. ("HULS"), which is a successor in interest to the original manufacturer/supplier Dynamit Nobel of America/Kay–Fries Holding Company. The Westfield complaint alleges (1) a product liability claim under R.C. 2307.71 *et seq.* and (2) a negligent failure of HULS to warn the tenants that the TROCAL system was prone to shattering. Westfield claims the right to file suit as beneficiaries of UAP's right to be warned of the roof defect as original purchasers of the roof system. Westfield alleges that a defective TROCAL S–60

roof was the proximate cause of the roof leak at the UAP mall, resulting in economic damage to the mall tenants insured by Westfield. See R.C. 2307.79.

On February 21, 1995, appellee HULS filed its answer to Westfield's complaint and filed a third-party complaint against UAP Columbus and Standard, alleging that UAP Columbus and Standard's failure to replace the roof, after they were warned of its weakened condition, was the cause of the water leakage. UAP Columbus and Standard answered HULS's complaint, asserting counterclaims alleging that HULS was liable to them for violations of the Ohio Product Liability Act (R.C. 2307.71 *et seq.*), negligence, breach of express and implied warranties, and misrepresentation of the nature of the TROCAL roof system. On September 15, 1995, Westfield amended its complaint to include as defendants UAP Columbus and Standard. On December 14, 1995, Hartford, as insurer and subrogee of UAP Columbus and Standard, intervened in the action, filing its complaint against HULS, asserting claims against appellee for breach of express and implied warranties, violations of Ohio product liability law, negligence, and misrepresentation. In their respective complaints, Westfield alleged economic damage proximately caused by the defective roof and HULS's failure to warn, and UAP alleged economic and property damage, including damage to the alleged defective TROCAL roof.

On September 18, 1996, HULS filed its motion for summary judgment against appellants Westfield and UAP, claiming that (1) the roof was a fixture and therefore not subject to the provisions of R.C. 2307.71 *et seq.*, (2) the warranty claims of appellants were barred because (a) HULS's liability was limited by the terms of the warranty, (b) the warranty terms limited the warranty to maintaining the roof in a watertight condition for the term of the warranty, (c) the limited warranty expressly excluded all other warranties, express or implied, including the warranty of merchantability and fitness for a particular purpose, (d) the warranty term of ten years had expired on May 4, 1991, prior to the filing of appellants' complaints, (3) the tort claims of appellants were barred by the economic-loss doctrine, and (4) HULS's failure to warn appellants of the shattering tendency of the TROCAL system was not the proximate cause of the damage claimed.

On February 24, 1997, the trial court entered judgment on its December 30, 1996 decision, granting summary judgment in favor of appellee and against all appellants on grounds that (1) pursuant to the Ohio Supreme Court's holding in *Wireman v. Keneco Distributors, Inc.* (1996), 75 Ohio St.3d 103, 661 N.E.2d 744, the roof was a fixture and not subject to product liability law, (2) appellants' failure-to-warn claims were unwarranted and inapplicable to a fixture, (3) appellants had not shown that HULS's actions were the proximate cause of appellants' injury, (4) all warranty claims were barred by the terms of the warranty or by

the expiration of the warranty period, and (5) the statute of limitations had run on appellants' claims. Appellants sought and were granted certification to appeal pursuant to Civ.R. 54(B). Appellants appealed separately from the trial court's decision, and the appeals were consolidated in this court.

Appellant Westfield and the other appellant insurance companies assert the following assignment of error:

"I. The trial court erred in granting defendant and third–party plaintiff's motion for summary judgment."

Westfield presents the following issues for review:

"A. In determining whether a good is a 'product' within the meaning of § 2307.71(L) of the Ohio Revised Code, a court must assess the good at the time of sale.

"B. Even if *Wireman* had held that 'products' are to be assessed at the time of their failure, HULS' Roofing System would still constitute a 'product.' ·

"C. As a movant on a motion for summary judgment, HULS was required to introduce evidence concerning its 'proximate cause' argument."

UAP asserts the following assignment of error:

"I. The trial court erred in granting defendant and third–party plaintiff's motion for summary judgment."

UAP presents the following issues for review:

"A. The trial court erred in finding the TROCAL Roofing System was not a product under the Ohio Product Liability Code.

"B. The trial court erred in holding Standard, UAP and Hartford's claims barred by the expiration of the warranty period.

"C. The trial court erred in finding the warranty issued by third–party plaintiff, HULS of America, Inc., did not fail of its essential purpose.

"D._ As a movant on a motion for summary judgment, HULS was required to introduce evidence concerning its 'proximate cause' argument.

"E. The trial court erred in granting summary judgment when HULS completely failed to address Hartford, Standard and UAP's misrepresentation claims against them."

On appeal, this court is asked to review the trial court's judgment regarding HULS's motion for summary judgment that was submitted to the court below. Summary judgment, Civ.R. 56, is a procedural device designed to terminate litigation and to avoid a formal trial where there is no genuine issue of material fact to be tried and the moving party is entitled to judgment as a matter

of law. In reviewing a summary judgment, the trial and appellate courts use the same standard, that the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and if, when they are so viewed, reasonable minds can come to differing conclusions, the motion should be overruled. *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 433, 21 O.O.3d 267, 271, 424 N.E.2d 311, 314–315. The court must follow the standard set forth in Civ.R. 56, which specifically provides that before summary judgment may be granted, "it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 273. See, also, *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615. The moving party has the burden of showing that there is no genuine issue of material fact as to the critical issue. The opposing party has a duty to submit affidavits or other materials permitted by Civ.R. 56 to show that a genuine issue for trial exists. See *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. The "duty of a party resisting a motion for summary judgment is more than resisting the allegations in the motion." *Baughn v. Reynoldsburg* (1992), 78 Ohio App.3d 561, 563, 605 N.E.2d 478, 480. A "motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. See, also, *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–295, 662 N.E.2d 264, 273–275.

■ The appellate court in reviewing the grant for summary judgment must follow the standards set forth in Civ.R. 56(C). " '[T]he reviewing court evaluates the record * * * in a light most favorable to the nonmoving party.' * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24, 26; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140, 1144. In its review of a grant for summary judgment, an appellate court may review all evidence of record properly submitted to the trial court. Under Civ.R. 56, summary judgment evidence can include "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact * * * timely filed." Civ.R. 56(C). As well, the court may consider further testimony pursuant to Civ.R. 56(E).

Appellants assert collectively the following issues for review: (I) the trial court erred in holding that the TROCAL roof was a fixture and not covered under

Ohio's product liability laws (see Westfield's issues "A" and "B," and UAP's issue "A"); (II) the trial court erred in finding that appellant's "proximate cause" claim against HULS would fail (see Westfield's issue "C" and UAP's issue "D"); (III) the trial court erred in holding that appellants' warranty claims were time-barred (see issues "C" and "D" above); (IV) the trial court erred in not finding that HULS's warranty failed of its essential purpose (see UAP's issues "B" and "C"); (V) and the trial court erred in granting summary judgment to HULS on appellants' misrepresentation claims (see UAP issue "E").

■ I. Appellants argue that the trial court erred in finding that their product liability causes of action failed on the grounds that the TROCAL roof was not a product but a fixture. This court finds that the trial court's determination that the TROCAL roof was a fixture is not dispositive of that court's final decision to grant summary judgment in favor of appellee HULS. This court will not, therefore, address appellants' issues regarding the trial court's determination that the roof was a fixture in light of this court's findings, as outlined below, that summary judgment was proper regardless of whether the roof was a fixture or a product.

Assuming, *arguendo,* that the TROCAL S–60 roof could be properly deemed a "product" within the meaning of R.C. 2307.71 *et seq.,* this court finds that, pursuant to R.C. 2307.71, a "claimant" is a person who asserts a product liability claim; a "claim" is one for compensatory damages for (physical) damage to property; and "economic loss" is direct, incidental, or consequential pecuniary loss (including) nonphysical damage to property. R.C. 2307.71(A), (M), and (B). R.C. 2307.77 permits an action to be brought if a product is defective in that it does not conform to a manufacturer's representations, and R.C. 2307.79 permits compensatory damages for economic loss that proximately resulted from a defective product where compensatory property damages are recoverable.

While the Westfield appellants may be described as claimants under the above statute in that they bring a claim that the TROCAL roof system was defective in manufacture, design, construction, or formulation, this court notes that appellants' damage, as insurers of the tenants, is economic loss not resulting from loss of property but stemming from the tenant's loss of business as a result of the leaking roof.

■ "Economic loss" is "described as either direct or indirect. 'Direct' economic loss includes the loss attributable to the decreased value of the product itself." *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.* (1989), 42 Ohio St.3d 40, 43, 537 N.E.2d 624, 629. Westfield has not suffered direct economic loss attributable to a decreased value of the roof. " 'Indirect' economic loss includes the consequential losses sustained by the purchaser of the defective product,

which may include \* \* \* lost profits." *Id.* at 44, 537 N.E.2d at 629. The *Chemtrol* court held that "an action in strict liability, may be maintained for purely economic loss" by those not in privity with the manufacturer of the defective product. *Id.* at 49, 537 N.E.2d at 634. However, the court based its holding on cases in which the economic loss was in fact a "direct" loss attributable to the decreased value of the product itself. *Id.*, citing *Inglis v. Am. Motors Corp.* (1965), 3 Ohio St.2d 132, 32 O.O.2d 136, 209 N.E.2d 583, and *Iacono v. Anderson Concrete Corp.* (1975), 42 Ohio St.2d 88, 93, 71 O.O.2d 66, 69, 326 N.E.2d 267, 270–271.

In the instant matter, the Westfield tenants are not purchasers of a defective product, and even if they were to be so construed, their alleged injury is indirect economic loss based upon a claim of lost business profits, and not one based upon the loss of the product's value due to the defect alleged. Here, there is "no liability for pecuniary loss of bargain." *Inglis* at 132, 32 O.O.2d at 136, 209 N.E.2d at 583. See, also, *Lapuma v. Collinwood Concrete* (Mar. 17, 1994), Cuyahoga App. No. 64882, unreported, 1994 WL 86211. Therefore, the pure economic loss complained of is not of a type that provides a cause of action under R.C. 2307.71 *et seq. Chemtrol* at 40, 537 N.E.2d at 628–629; *Lawyers Cooperative Publishing Co. v. Muething* (1992), 65 Ohio St.3d 273, 276–277, 603 N.E.2d 969, 971–973. See, also, R.C. 2307.71.(M), 2307.72(C), 2307.73(A), and 2307.79.

Further, while R.C. 2307.79 permits a product liability claimant to recover "economic loss that proximately resulted from the defective aspect of the product," such recovery is limited to those claimants entitled to recover compensatory damages pursuant to R.C. 2307.73 or 2307.78. Compensatory damages in a product liability claim are those damages resulting from "death, physical injury to person, emotional distress, or physical damage to property other than the product involved, that allegedly arose from" the defect in the product. R.C. 2307.71(M). Westfield has not alleged compensatory damages pursuant to R.C. 2307.71(M) and therefore is not entitled to recover economic damages pursuant to R.C. 2307.79.

The *Chemtrol* court held that for "actions sounding in negligence, '[t]he well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.' " *Id.*, 42 Ohio St.3d at 44, 537 N.E.2d at 630. In the "absence of injury to persons or damage to other property the [plaintiff] may not recover for economic losses premised on tort theories of strict liability or negligence." *Id.* at 51, 537 N.E.2d at 635.

R.C. 2307.72(C) provides:

"Any [claim for] recovery of compensatory damages for economic loss based on a claim that is asserted in a civil action, other than a product liability claim, is not

subject to sections 2307.71 to 2307.79 of the Revised Code, but may occur under the common law of this state or other applicable sections of the Revised Code."

Although a cause of action may concern a product, it is not a product liability claim within the purview of Ohio's product liability statutes unless it alleges damages other than economic ones, and a failure to allege other than economic damages does not destroy the claim, but rather removes it from the purview of those statutes. *Lapuma, supra.* In order "to recover indirect economic damages in a negligence action, the plaintiff must prove that the indirect economic damages arose from physical injury to person or from tangible * * * property damage." *Queen City Terminals, Inc. v. Gen. Am. Transp. Co.* (1995), 73 Ohio St.3d 609, 653 N.E.2d 661, syllabus. Westfield has not shown loss or damage arising from physical injury to person or from tangible property damage, and therefore the doctrine of strict liability in tort is not available for the recovery of appellants' purely economic losses. *Chemtrol,* 42 Ohio St.3d at 44–45, 537 N.E.2d at 629–631. Appellants' causes of action for purely economic damages are not ones that may be brought in a negligence action, and they fail on this ground. *Id.* at 40, 537 N.E.2d at 626–627.

This court finds that Westfield's claim is one for purely economic damages and therefore is not a proper claim under the product liability statutes. R.C. 2307.71(M). The trial court did not err or abuse its discretion in dismissing Westfield's actions brought on those grounds or in granting appellee's motion for summary judgment against appellants' product liability claims.

Westfield further alleges that HULS negligently failed to warn the mall tenants of the defective nature of the TROCAL roof. HULS was informed of the defect in the TROCAL roofing system sometime in September 1990 through a roofing industry warning, and UAP discovered the defect through an independent evaluation of the roof on March 16, 1992. The roof shattered and failed on January 17, 1994. Westfield alleges that HULS was under a duty to warn UAP of the defect and that the tenants would have been beneficiaries of any warning that HULS should have given to UAP. Appellants contend that HULS owed a duty to warn the mall tenants, as well as warn UAP, of the TROCAL defect. We disagree.

A cause of action in negligence alleging a defendant's "failure to meet the duty to warn" is the same as in strict liability actions. A negligence cause of action is "an *alternative* to a strict liability cause of action for failure to warn." (Emphasis *sic.*) *Crislip v. TCH Liquidating Co.* (1990), 52 Ohio St.3d 251, 256, 556 N.E.2d 1177, 1181–1182. However, an "insurer-subrogee cannot succeed to or acquire any right or remedy not possessed by its insured-subrogor." *Chemtrol, supra,* paragraph one of the syllabus. Therefore, the mall tenants must be

able to bring a negligent failure-to-warn action in their own right before Westfield will be permitted to file suit as subrogee in their place.

To establish actionable negligence it is fundamental that a plaintiff show the existence of a duty on the part of the defendant toward the plaintiff, a breach of that duty, and an injury proximately caused by such breach of duty. Where there is no duty or obligation of care or caution, there can be no actionable negligence. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265, 269–270; *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467. See, also, *Jeswald v. Hutt* (1968), 15 Ohio St.2d 224, 44 O.O.2d 196, 239 N.E.2d 37; *Norwalk v. Tuttle* (1906), 73 Ohio St. 242, 76 N.E. 617; *Elster v. Springfield* (1892), 49 Ohio St. 82, 30 N.E. 274. The mere omission of a duty that causes injury is not the foundation of a negligence action unless it results in injury to one for whose protection the duty is imposed. See *Cleveland Terminal & Valley RR. Co. v. Marsh* (1900), 63 Ohio St. 236, 58 N.E. 821. While it may be argued that appellee owed a duty to UAP to warn of the possibility of the roof's failure, it is clear from the record that the tenants were not considered as beneficiaries of UAP's rights and benefits with regards to the TROCAL roof. See *Drew v. Gross* (1925), 112 Ohio St. 485, 147 N.E. 757; *McCoy v. Engle* (1987), 42 Ohio App.3d 204, 207, 537 N.E.2d 665, 668–669.

HULS was under no duty to warn the mall tenants of the roof's propensity to shatter, and Westfield, likewise, cannot support its negligence claim where the defendant owes neither it nor its insured a duty to warn. It was UAP Columbus and Standard that contracted with appellee HULS (then Dynamit/DNA) to provide a TROCAL roof for the Lane Avenue shopping mall. The tenants were not a part of the agreement between HULS and UAP. In fact, the lease agreement between UAP Columbus and Standard and the mall tenants, under which the tenants contracted with Standard as management company for UAP Columbus, provides that the tenants have no control over or rights in the roof area or its maintenance. Therefore, HULS's duty would have been one to warn UAP Columbus and Standard of any defect in the roof, not the tenants. While it may be true that the tenants could have benefitted from HULS's warning of the defective properties of the TROCAL system, and while HULS may have owed a duty to warn UAP of such a defect, there is no evidence in the record that HULS owed a duty to the tenants to provide such a warning. Westfield's alleged right to be warned as beneficiaries of UAP's rights is directly derived from any rights that the tenants gained from UAP. As has been stated earlier, UAP's lease specifically states that the tenants have no rights in the roof and therefore Westfield had no right to be warned by HULS of the roof's condition.

If the Westfield tenants could somehow be considered as having the right to bring their negligent-failure-to-warn suit, that action is further barred by

the statute of limitations on such actions. Since Westfield's negligence action stems from an assertion that they are beneficiaries of UAP's rights against appellee HULS, it follows that the statute of limitations governing Westfield's action is the same as that applied to any similar action that UAP could bring. A party in privity of contract with the defendant, as UAP is with HULS in the instant matter, may not bring a negligence action seeking purely economic damages against that defendant. *Chemtrol*, 42 Ohio St.3d at 49, 537 N.E.2d at 633–634. Therefore, any claim by UAP against HULS must be based upon some damage to person or property, as well as economic damage. *Id.* The Ohio Supreme court has held that suits "for [personal] property damage caused by an allegedly defective product * * * are controlled by the statute of limitations contained in R.C. 2305.10." *Sun Refining & Marketing Co. v. Crosby Valve & Gage. Co.* (1994), 68 Ohio St.3d 397, 398, 627 N.E.2d 552, 554.

Westfield's negligence claim is therefore also governed by the two-year statute of limitations set forth in R.C. 2305.10. See, also, *McAuliffe v. W. States Import Co., Inc.* (1995), 72 Ohio St.3d 534, 651 N.E.2d 957 (court held that because R.C. 2307.73, regarding compensatory damages in product liability actions, does not provide a cause of action against a successor corporation that would not exist but for the statute, causes of action brought pursuant to R.C 2307.73 are not governed by the six-year statute of limitations provided by R.C. 2305.07, but by the two-year statute of limitations provided by R.C. 2305.10). Pursuant to R.C. 2305.10, negligence actions such as appellants' must be brought within two years after the cause of action accrues. *Lawyer's Cooperative*, 65 Ohio St.3d at 277, 603 N.E.2d at 972–973. See, also, *Lee v. Wright Tool & Forge Co.* (1975), 48 Ohio App.2d 148, 2 O.O.3d 115, 356 N.E.2d 303; *Venham v. Astrolite Alloys* (1991), 73 Ohio App.3d 90, 596 N.E.2d 585.

Courts have held, for the purposes of the two-year limitation set forth in R.C. 2305.10:

"When [a cause of action] does not manifest itself immediately, the cause of action does not arise until the plaintiff knows or, by exercise of reasonable diligence should have known, that he had been injured by the conduct of the defendant.* * *." *O'Stricker v. Jim Walter Corp.* (1983) 4 Ohio St.3d 84, 4 OBR 335, 447 N.E.2d 727, paragraph two of the syllabus.

If, as Westfield argues, the mall tenants had a right to be warned of the TROCAL defect based upon UAP's rights, their cause of action would have accrued when UAP's cause of action accrued. UAP's cause of action accrued on March 16, 1992, when they knew or should have known that the TROCAL roof system was defective. The time for bringing a suit for negligent failure to warn would therefore have expired two years later, on March 16, 1994. Westfield filed its action against appellee on January 13, 1995, or approximately ten months after

the time for bringing the suit had expired. The UAP appellants can be said to have filed their suits, at the earliest, on the same date as Westfield, or at the latest on the subsequent date that their third-party counterclaims were filed against HULS. Appellants' causes of action for failure to warn were filed after the statute of limitations for bringing such actions had expired. Therefore, the trial court did not err or abuse its discretion in dismissing Westfield's and UAP's negligence claims.

II. Also regarding appellants' "negligent failure to warn" claims, the record indicates that both Westfield and UAP have failed to provide support for their claim that HULS's failure to warn the Lane Avenue tenants or UAP of the TROCAL defect was the proximate cause of the injury. *Mussivand,* 45 Ohio St.3d at 318, 544 N.E.2d at 269–270.

" 'One of the hurdles * * * standing between proof of negligent failure to warn and ultimate recovery[,] is the necessity of proof of a proximately causal relationship between the negligence and the injury.' *Hargis v. Doe* (1981), 3 Ohio App.3d 36, 37, 3 OBR 38, 40, 443 N.E.2d 1008, 1011 * * *.

"Even if it be proved that a manufacturer failed to warn of a product-related danger, 'it is relevant to show whether the user of the product would have acted in the same manner had a proper warning been given.' " *Whiston v. Bio–Lab,Inc.* (1993), 85 Ohio App.3d 300, 305, 619 N.E.2d 1047, 1050.

Once a party moving for summary judgment places some evidence before the court which affirmatively shows that the nonmoving party has no evidence to support its claims, the nonmoving party "must proceed to demonstrate affirmatively the facts which would entitle that party to relief." *Baughn,* 78 Ohio App.3d at 563, 605 N.E.2d at 480. See, also, *Dresher,* 75 Ohio St.3d at 293, 662 N.E.2d at 273–274. HULS presented evidence that UAP Columbus and Standard were aware of the alleged defective condition of the TROCAL roof prior to the 1994 leak and that they had failed to act upon that knowledge to prevent the leak. Appellants have failed to demonstrate that they would have acted differently had they been warned of the "defect" by HULS rather than by Roofing Solutions. Negligence is without legal consequence unless it is a proximate cause of an injury. *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 347, 28 OBR 410, 411–412, 504 N.E.2d 19, 21–22. In order "to establish proximate cause, foreseeability must be found. In determining whether an intervening cause 'breaks the causal connection between negligence and injury depends upon whether that intervening cause was reasonably foreseeable by the one who was guilty of the negligence. If an injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all attending circumstances, the injury is then the proximate result of the negli-

gence.'" *Mussivand,* 45 Ohio St.3d at 321, 544 N.E.2d at 272, quoting *Mudrich v. Std. Oil Co.* (1950), 153 Ohio St. 31, 39, 41 O.O. 117, 121, 90 N.E.2d 859, 863.

The risk "created by the defendant may include the intervention of the foreseeable negligence of others." Prosser, Law of Torts (5 Ed.1984) 304, Section 44. There are, also, intervening causes which could not be contemplated by a person as a consequence of the negligent act, but are nevertheless considered normal incidents of the risks the defendant has created. *Id.* at 306. These acts would be considered intervening causes to the injury, but they would not supersede a party's own negligence as the proximate cause of the injury. However, "[i]f the defendant can foresee neither any danger of direct injury, nor any risk from an intervening cause, the defendant is simply not negligent." *Id.* at 311.

If, *arguendo,* HULS's failure to warn, either UAP or the tenants, can be considered a negligent act, UAP's subsequent failure to repair the roof or to warn its tenants of the shattering tendency of the roof could be seen as an intervening, superseding cause of the injury.

The record does not provide evidence that UAP's failure to repair the roof or warn its tenants of the roof "defect" derived from a lack of knowledge of the defect caused by HULS's failure to warn. UAP's failure to act on or warn of the roof defect are actions that were (1) not foreseeable by HULS, (2) not a consequence of HULS's acts or omissions, and·(3) not under HULS's control. *Drake v. E. Cleveland* (1920), 101 Ohio St. 111, 127 N.E. 469. Given UAP's knowledge of the "defect" on or about March 16, 1992, and evidenced by the fact that subsequent to obtaining such knowledge regarding the roof UAP did not act on or warn the tenants of the defect, UAP has failed to show that it would have warned the tenants or taken action to have the roof repaired even if HULS had warned UAP of the defect. UAP's failure to repair the roof or to warn its tenants of the defect, therefore, constitutes an intervening, superseding cause of the injury alleged by appellants, which removes the negligent effect of HULS's alleged failure to warn. *Id.* See, also, *State Farm Mut. Auto. Ins. Co. v. VanHoessen* (1996), 114 Ohio App.3d 108, 110, 682 N.E.2d 1048, 1048–1049.

Therefore, this court finds that the trial court did not err in granting appellee's motion for summary judgment with regard to appellants' failure to prove proximate cause.

III. UAP filed counterclaims and complaints against HULS that alleged that HULS was negligent in its failure to warn of the TROCAL roof defect, misrepresented the TROCAL roof's fitness for its intended purpose, breached its warranties both express and implied, and that the TROCAL roof was a defective product under Ohio's product liability law. As discussed above, appellants have failed to

show that appellee's failure to warn of the defect in the TROCAL system was the proximate cause of appellants' injury, and the trial court did not err in granting summary judgment in this regard.

UAP also contends that the court erred in finding that the TROCAL roof was a fixture and not a product, thus barring its product liability claims. As mentioned above, this court finds that appellants' claims are barred whether the TROCAL roof is deemed a product or a fixture, and a determination of the status of the TROCAL roof as product or fixture is unnecessary.

██ If the TROCAL roof is deemed a fixture, the time for bringing an action for injury resulting from a condition of the roof is governed by the four-year statute of limitations provided by R.C. 2305.09(D), or the ten-year statute of limitation provided by R.C. 2305.14. *Taylor v. Multi–Flo, Inc.* (1980), 69 Ohio App.2d 19, 23 O.O.3d 20, 429 N.E.2d 1086. See, also, *Adcor Realty Corp. v. Mellon–Stuart Co.* (N.D.Ohio 1978), 450 F.Supp. 769. Such an action must be brought within either the four- or ten-year period after the action accrued. R.C. 2305.09(D) and 2305.14. See, also, R.C. 2305.131(C).

As a fixture, the TROCAL roof would be considered defective as installed on May 4, 1981. Therefore, under the laws governing actions arising out of defective fixtures, appellants' claims were time-barred at the latest ten years after installation, or on May 4, 1991. Appellants' actions were not filed until 1995, at least three and one-half years after the time for such filing had expired, and their actions under a fixture theory are barred by the relevant statutes of limitations.

██ If the TROCAL roof were deemed a product, appellants argue, their product liability and warranty claims are not barred. We disagree. Under a product liability theory, pursuant to R.C. 2307.71 *et seq.*, the time for filing appellants' actions would be governed by R.C. 2305.10, which provides that a cause of action based on a product liability claim (injury to personal property) shall be brought within two years after the cause of action accrues. R.C. 2305.10(A). See, also, *Dreher v. Willard Constr. Co.* (1994), 93 Ohio App.3d 443, 638 N.E.2d 1079. When a cause of action does not manifest itself immediately, the cause of action does not arise until the plaintiff knows or, by the exercise of reasonable diligence, should have known that he had been injured. *Venham,* 73 Ohio App.3d 90, 596 N.E.2d 585.

██ The discovery rule announced by the *O'Stricker* court requires two criteria to be met before the limitation period set forth in R.C. 2305.10 commences to run. First, the plaintiff must know or should have reasonably known that he has been injured and, second, the plaintiff must know or reasonably should have known that his injury was proximately caused by the conduct of the defendant. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 13 OBR 8,

467 N.E.2d 1378. Appellants knew, at the latest, on March 16, 1992, that HULS, as successor corporation to Dynamit, was responsible for supplying and installing the TROCAL roof at the mall, and appellant had reason to believe that the TROCAL roof was defective or prone to shattering. Their cause of action therefore accrued on March 16, 1992.

UAP's product liability claim is one for compensatory and economic damages, governed by R.C. 2307.73. The Ohio Supreme Court has held that "causes of action brought pursuant to R.C. 2307.73 are not governed by the six-year statute of limitations provided in R.C. 2305.07" (*McAuliffe*, paragraph two of the syllabus) but instead are governed by the two-year limitation provided by R.C. 2305.10. *McAuliffe*, 72 Ohio St.3d at 540, 651 N.E.2d at 961–962. Therefore, appellants' cause of action based on a product liability claim accrued when appellants discovered, on March 16, 1992, that the TROCAL roofing material was prone to shattering, and the time for bringing such an action began to run on that date. The time for filing their product liability action expired on March 16, 1994, ten months prior to appellants' earliest filing date of January 13, 1995. This court finds that the trial court did not err in finding that appellants' product liability causes of action were barred by the time limitations for filing such claims.

 Appellants further argue that their warranty claims are not time-barred. The four-year statute of limitations of R.C. 1302.98(A) governs claims for property damage when, as appellants contend, the transaction concerns a sale of goods. *Prokasy v. Pearle Vision Ctr.* (1985), 27 Ohio App.3d 44, 27 OBR 46, 499 N.E.2d 387. As has been stated above, the warranties for the TROCAL roof expired on May 4, 1991. R.C. 1302.98(A) provides that an "action for breach of any contract for sale must be commenced within four years after the cause of action accrued." A "cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods, * * * the cause of action accrues when the breach is or should have been discovered." R.C. 1302.98(B). The United States Court of Appeals for the Sixth Circuit held that, under R.C. 1302.98, the cause of action accrues when a plaintiff discovered, or should have discovered, the defect in the product so long as the discovery arose during the warranty period. *Std. Alliance Industries, Inc. v. Black Clawson Co.* (C.A.6 1978), 587 F.2d 813, 821. Appellants did not discover the defect within the warranty period, and the warranty expired on May 4, 1991. UAP's warranty cause of action accrued, therefore, on May 4, 1981, and is time-barred in this respect.

 Further, the Ohio Supreme court has held that when a sophisticated commercial buyer sues for property damage caused by an allegedly defective

product, claims relating to property other than the defective product itself are controlled by the statute of limitations contained in R.C. 2305.10 for personal property or R.C. 2305.09(D) for real property. *Sun Refining*, 68 Ohio St.3d at 397, 627 N.E.2d at 553. As has been stated above, and under the *Sun* court's holding, the statutes of limitations for real property actions as well as for personal property causes of action have expired, and appellants' claims for compensatory damages under the warranty are time-barred in this respect.

IV. Appellants also argue that, because of the limitations contained in the TROCAL warranty, the warranty contract itself fails of its essential purpose and is unconscionable. The limited five-year warranty issued to UAP by Dynamit ("DNA"), issued May 4, 1981 and renewed by UAP for an additional five-year period, provided in part:

"Dynamit Nobel of America, Inc. (DNA) warrants to maintain the TROCAL roof of the Lane Avenue Shopping Center, in a watertight condition at its own expense for a period of five years from this date provided that the owner gives DNA written notice of any leaks within 30 days from discovery of such leaks * * *.

"This warranty is solely intended to cover any condition caused by defective TROCAL Brand material supplied by DNA, or from installation or ordinary wear and tear thereof. It shall not include any condition due to lightning, full gales, hailstones, hurricanes or similar sudden unusual natural occurrences or any condition caused by any deliberate act or negligence in maintaining said roof * * *. LIABILITIES HEREUNDER SHALL BE LIMITED SOLELY TO THE COST OF REPAIR OR INSTALLATION OF NEW TROCAL BRAND MATERIAL BY AN AUTHORIZED TROCAL APPLICATOR. DNA shall have no responsibility for any damage to other components of the roof or of the building, nor for any incidental or consequential damage. This warranty shall be governed by and construed in accordance with the laws of the State of New York.

"This warranty will not cover damage due to repair or subsequent work on or through the roof without DNA's written approval of the methods and materials to be used.

"* * *

"THE PARTIES AGREE THAT THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, ARE EXCLUDED FROM THIS TRANSACTION AND SHALL NOT APPLY TO THE GOODS SOLD."

Before reaching a determination as to whether the warranty fails of its essential purpose or is unconscionable, it must first be noted that the parties had

expressly agreed that "[t]his warranty shall be governed by and construed in accordance with the laws of the State of New York." The Ohio Supreme Court has held that "a forum selection clause contained in a contract between business entities is valid and enforceable, unless it can be clearly shown that enforcement of the clause would be unreasonable and unjust." *Kennecorp Mtge. Brokers, Inc. v. Country Club Convalescent Hosp., Inc.* (1993), 66 Ohio St.3d 173, 176, 610 N.E.2d 987, 989–990. Absent such unjust or unreasonable enforcement, the "law of the state chosen by the parties to govern their contractual rights and duties will be applied." *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.* (1983), 6 Ohio St.3d 436, 438, 6 OBR 480, 482, 453 N.E.2d 683, 686.

Both Ohio and New York law permit parties to a contract to exclude or modify warranties, expressed and implied, accompanying a sale of goods. See R.C. 1302.29. Upon review and comparison of the New York laws (New York Uniform Commercial Code Chapter 553, Article 2, Part 3, Sections 2–313 through 2–318) (see appendix) and Ohio state laws (R.C. Title 13, Chapter 1302 [Sales], R.C. 1302.26 through 1302.31) regarding the sale of goods, we find that the relative New York ("NY") code sections are of sufficiently similar effect that it is not unjust or unreasonable to construe the warranty regarding the sale and use of the TROCAL roof within Ohio pursuant the N.Y. code section governing such goods.

■■■ Appellants contend that the warranty failed of its essential purpose and is unconscionable in its limitations. Appellee argues that the warranty terms are clear and that it fulfilled the warranty conditions, and the warranty did not fail thereby. The question of whether contract terms are clear or ambiguous is a question of law for the court. *Ohio Historical Soc. v. Gen. Maintenance & Eng. Co.* (1989), 65 Ohio App.3d 139, 146, 583 N.E.2d 340, 344. Regarding warranties, Ohio courts have held that in order to "constitute a valid contract there must be parties capable of contracting, a lawful subject matter, a sufficient consideration, a meeting of the minds of the parties, an actual agreement between the parties to do or to forbear doing the thing proposed in the agreement, and a compliance with the law in respect of any formal requisites which may pertain to the contract." *Will v. View Place Civic Assn.* (1989), 61 Ohio Misc.2d 476, 483, 580 N.E.2d 87, 92, citing *Feldman v. Roth* (1932), 12 Ohio Law Abs. 121.

■■■ As in Ohio, N.Y. law provides that parties may limit or exclude from their warranties all express or implied warranties, limit or exclude the implied warranties of merchantability and fitness for a particular purpose, and limit remedies for breach of warranty. NY U.C.C. 553, Section 2–316. The Ohio Supreme court has held that "[w]aiver as applied to contracts is a voluntary relinquishment of a known right." *White. Co. v. Canton Trans. Co.* (1936), 131 Ohio St. 190, 5 O.O. 548, 2 N.E.2d 501. Contracting "parties are free to

determine which warranties shall accompany their transaction. Accordingly, both the implied warranties of merchantability and of fitness may be excluded or modified, if the exclusion or notification meets the criteria set forth in R.C. 1302.29(B)." *Chemtrol,* 42 Ohio St.3d at 55, 537 N.E.2d at 638. This court finds that the contracting parties in the instant matter, HULS and UAP Columbus, are business entities that had voluntarily entered into a limited warranty agreement, whereby certain rights were gained and certain others relinquished.

Express warranties regarding goods can be created by a seller of the goods by affirmation, promise or description of the qualities of the goods sold. R.C. 1302.26. See, also, N.Y. U.C.C. Section 2–313. NY U.C.C. Section 2–317(c) provides that any express warranties displace inconsistent implied warranties other than an implied warranty of fitness for a particular purpose. However, N.Y. U.C.C. Sections 2–314 and 2–315 further provide that the implied warranties of merchantability and fitness for a particular purpose may be excluded or modified pursuant to the provisions contained in Section 2–316.

A party seeking to exclude or modify the implied warranties of merchantability or fitness for a particular use, or any part thereof, must do so in writing and in a conspicuous manner. R.C. 1302.29(B). See, also, N.Y. U.C.C. 2–316(2). The term "conspicuous" is defined by the Ohio Revised Code as being "so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals * * * is 'conspicuous.' Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color." R.C. 1301.01(J). See, also, N.Y. U.C.C. 1–201(10). From the record, this court finds that the disclaimer language in appellee's two-page warranty was conspicuous pursuant to R.C 1302.29(B).

R.C. 1302.93(A)(1) provides that "[t]he agreement * * * may limit * * * the buyer's remedies to * * * repair and replacement of nonconforming goods or parts." Courts have held that "[s]ection 1302.93(A)(2) of the Ohio Revised Code provides: 'Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.'" *Cannon v. Neal Walker Leasing, Inc.* (June 28, 1995), Summit App. No. 16846, unreported, 1995 WL 404961.

The record indicates that the limitation of HULS's liability to the cost of repair or replacement of the roof was done in accordance with the provisions for limiting remedies set forth in R.C. 1302.29(D) and 1302.93(A), and is the sole remedy agreed upon by the parties. See, also, N.Y. U.C.C. 2–715 and 2–719. Appellee limited the warranty liability and also limited the remedies available to appellant under the warranty. See *Cannon, supra.* The limitation of remedies is also conspicuous, in that it directly follows the limitation of damages and is so written that a reasonable person ought to have noticed it, and is in accord with the

relevant provisions of the Revised Code. See R.C. 1302.93(C) and N.Y. U.C.C. 2–719. See, also, *Ins. Co. of N. Am. v. Auto. Sprinkler Corp.* (1981), 67 Ohio St.2d 91, 96–97, 21 O.O.3d 58, 61–62, 423 N.E.2d 151, 154–155.

 A party may limit or disclaim the implied warranty of fitness of a product "for its intended use, * * * provided the disclaimer is not unconscionable." *Irving Leasing Corp. v. M & H Tire Co.* (1984), 16 Ohio App.3d 191, 193, 16 OBR 205, 207–208, 475 N.E.2d 127, 130. A warranty disclaimer that leaves a party with a defective product and no avenue for recourse against the manufacturer is unconscionable. However, a warranty in which the party disclaiming warranties or remedies assumes some form of responsibility for the performance or maintenance of the product in issue is not unconscionable. *Id.* at 194–195, 16 OBR at 208–210, 475 N.E.2d at 131–133. Pursuant to R.C. 1302.15(A), a determination of whether a warranty is unconscionable is determined from the facts "at the time [the warranty] was made." See, also, N.Y. U.C.C. Section 2–302(1).

At the time the warranty was made, appellee's warranty provided that HULS warranted "to maintain the TROCAL roof of the Lane Avenue Shopping Center, in a watertight condition at its own expense for [the term of the warranty period]," here ten years, and that the warranty covered "any condition caused by defective TROCAL Brand material supplied by DNA, or from installation or ordinary wear and tear thereof." From the language of the warranty, it appears that HUL'S only obligation was to maintain the TROCAL roof in a watertight condition for the warranty period (of ten years), which corresponds to the expected service life of the roof. The language of appellee's warranty makes it clear that "the implied warranties of merchantability and fitness for a particular purpose and all other warranties, express or implied, are excluded" from the warranty, and that the liability of HULS is limited to only the cost of repair or installation of new TROCAL brand material. The HULS warranty provided an avenue of recourse for repair of the roof and the record shows that the roof was maintained in a watertight condition for the warranty period. Therefore, the warranty did not fail and was not unconscionable in this regard.

 Appellants argue that appellee had also made express warranties in the TROCAL roof system by affirmation, promise, or description, pursuant to R.C. 1302.26, by asserting that the roof system "stays watertight," "resists thermal shock," and "requires little or no maintenance." Further, appellants contend that appellee misrepresented the roof system by making misleading statements that the roof "was a high quality roof system; that the Trocal Roof System would remain leak-free; that the Trocal Roof System was a suitable replacement [for the mall roof]; and that the Trocal Roof System resists thermal shock due to radical temperature fluctuations." From the record it appears that the roof

remained watertight for a total period of thirteen years from installation, or approximately two and one-half years after the expected service life of the roof had expired. The record indicates that the roof satisfied the requirements of a mall roof for its service life and that it did resist temperature fluctuations up to and beyond the expiration of the warranty period.

This court finds that appellee's warranty was not unreasonable in its limitations and that appellants were given the remedy of repair or replacement of any defect in the roof during the ten-year warranty period. Such limitations are permitted by law and were voluntarily agreed to by business entities. Therefore, the warranty is not unconscionable in this regard. *Irving*, 16 Ohio App.3d at 194, 16 OBR 205, 475 N.E.2d at 131. See, also, *Barksdale v. Van's Auto Sales, Inc.* (1989), 62 Ohio App.3d 724, 577 N.E.2d 426; *Ohio Sav. Bank v. H.L. Vokes Co.* (1989), 54 Ohio App.3d 68, 560 N.E.2d 1328; *Eckstein v. Cummins* (1974), 41 Ohio App.2d 1, 70 O.O.2d 10, 321 N.E.2d 897. Further, this court finds that the agreement excluded liability for consequential or incidental damages that may have resulted from a defective TROCAL roof. The record reflects that the roof resisted thermal shock due to temperature fluctuations and was maintained in a watertight condition for the ten-year warranty period, and remained leak-free for a total of thirteen years. This court finds that the warranty did not, therefore, fail of its essential purpose, namely of keeping the roof watertight and leak-free for a period of ten years.

██ Further, by the language of N.Y. U.C.C. Section 2–318, while it is reasonable to include the tenant merchants of Lane Avenue mall as "such person [who] may use, consume or be affected by the goods," the statute encompasses only that person "who is injured in person by breach of warranty." The tenants were not injured in their person by HULS's alleged breach of warranty and therefore are not considered beneficiaries of the warranty under New York law. By extension, the insurance companies who insured the tenants are not in privity with appellee in this respect and cannot bring action under the warranty. *Chemtrol*, 42 Ohio St.3d at 40, 537 N.E.2d at 626–627. See, also, *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn.* (1990), 54 Ohio St.3d 1, 8, 560 N.E.2d 206, 212.

Therefore, this court finds that the trial court did not err in determining that the statute of limitations had expired on appellants' warranty claims or finding that appellants had failed to prove that they had an action under the warranty, and in granting summary judgment to appellee in this regard.

██ V. Finally, appellants allege that appellee misrepresented the roof as a high quality roof that would remain leak-free and resist temperature shock. Appellants' misrepresentation claims fail whether grounded in products liability

or presented as fraudulent or negligent misrepresentation. The United States Court of Appeals for the Sixth Circuit has held that advertisement of a fiberglass roof as "strong, light, [and] leakproof" was commercial puffery not subject to liability under R.C. 2307.77. *Jordan v. Paccar, Inc.* (C.A.6 1994), 37 F.3d 1181, 1183–1185. But even if appellants' misrepresentation claim were applicable to a products liability action, a plaintiff "seeking to recover for injuries incurred through the use of a product that does not conform to a manufacturer's representation [pursuant to R.C. 2307.77] must prove:

"(1) that the manufacturer made a representation as to a material fact concerning the character or quality of the manufacturer's product;

"(2) that the product did not conform to that representation;

"(3) that the plaintiff justifiably relied on that representation; and

"(4) that the plaintiff's reliance on the representation was the direct and proximate cause of the plaintiff's injuries." *Gawloski v. Miller Brewing Co.* (1994), 96 Ohio App.3d 160, 165, 644 N.E.2d 731, 734.

This court finds that the roof conformed to the representations made by appellee. The warranty did not represent the TROCAL roof as anything other than a roof that would remain watertight throughout the warranty, absent any defect. The warranty in question limits the warranty to the repair of the roof during the warranty period and states that the "warranty is solely intended to cover any condition caused by defective TROCAL Brand material." Clearly, the possibility that the TROCAL roof could contain a defect is indicated by the warranty. Further, there is no reflection in the record that appellee represented the roof as one that would last for more than ten years. There is no indication that appellee misrepresented its TROCAL roof with regard to its properties, or that the roof failed to conform to the representations made. Also, as has been stated earlier, appellants have failed to demonstrate that their reliance on the representation was the direct and proximate cause of the plaintiff's injuries. Appellants have, therefore, not shown that they have a sustainable claim of misrepresentation pursuant to R.C. 2307.77.

Misrepresentation or false representation is also an essential element of the tort of fraud. 50 Ohio Jurisprudence 3d (1984, Supp.1997) 376, Fraud and Deceit, Section 26. The elements of fraudulent misrepresentation are:

" '1. A false representation; actual or implied, or the concealment of a matter of fact, material to the transaction; made falsely.

" '2. Knowledge of the falsity—or statements made with such utter disregard and recklessness that knowledge is inferred.

" '3. Intent to mislead another into relying on the representation.

" '4. Reliance—with a right to rely.

" '5. Injury as a consequence of that reliance. All of these elements must be present if actionable fraud is to be found. The absence of one element is fatal to recovery.' " *Manning v. Len Immke Buick* (1971), 28 Ohio App.2d 203, 205, 57 O.O.2d 308, 309, 276 N.E.2d 253, 255, quoting *Crabbe v. Freeman* (M.C. 1959), 81 Ohio Law Abs. 65, 67, 160 N.E.2d 583, 585.

Similarly, the doctrine of "negligent misrepresentation * * * provides a tort vehicle for recovery of economic damages that arise from the breach of a contractual duty, where information is negligently supplied for the guidance of others in their business transactions, and a foreseeable recipient of such information justifiably relies upon it" and suffers injury as a proximate cause of the negligent act. *Wodek v. Brandt Constr., Inc.* (Mar. 19, 1997), Medina App. No. 2578–M, unreported, 1997 WL 148055, citing *DeCapua v. Lambacher* (1995), 105 Ohio App.3d 203, 206, 663 N.E.2d 972, 974.

As has been stated above, there is no indication that appellee knowingly, or with reckless and utter disregard of the consequences, misrepresented its TROCAL roof with regard to its properties, or that appellee intended to mislead appellant by the representations made. Also, as has been stated earlier, appellants have failed to demonstrate that their reliance on the representation was the direct and proximate cause of the plaintiff's injuries. Appellants have, therefore, not shown that they have a sustainable claim of common-law misrepresentation.

This court therefore finds that the warranty did not fail in its essential purpose or that the appellee did not misrepresent the TROCAL roof.

For the foregoing reasons, this court finds that the trial court did not err in granting summary judgment in favor of appellee HULS, appellants Westfield's and UAP's assignments of error are overruled, and the judgment of the trial court is affirmed. The issue of whether the TROCAL roof is a product or a fixture is moot and is not addressed.

*Judgment affirmed.*

DESHLER, P.J., and TYACK, J., concur.

## APPENDIX

The relevant New York U.C.C. Sections in question are as follows:

### § 1–201. General Definitions

Subject to additional definitions contained in the subsequent Articles of this Act which are applicable to specific Articles or Parts thereof, and unless the context otherwise requires, in this Act:

* * *

(10) "Conspicuous": A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON–NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous". Whether a term or clause is "conspicuous" or not is for decision by the court.

### § 2–302. Unconscionable Contract or Clause

(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

### § 2–313. Express Warranties by Affirmation, Promise, Description, Sample

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

### § 2–314. Implied Warranty: Merchantability; Usage of Trade

(1) Unless excluded or modified (Section 2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a

merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

(3) Unless excluded or modified (Section 2–316) other implied warranties may arise from course of dealing or usage of trade.

## § 2–315. Implied Warranty: Fitness for Particular Purpose

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

## § 2–316. Exclusion or Modification of Warranties

(1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this Article on parol or extrinsic evidence. (Section 2–202) negation or limitation is inoperative to the extent that such construction is unreasonable.

(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

(3) Notwithstanding subsection (2)

(a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and

(b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and

(c) an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

(4) Remedies for breach of warranty can be limited in accordance with the provisions of this Article on liquidation or limitation of damages and on contractual modification of remedy (Sections 2–718 and 2–719).

### § 2–317. Cumulation and Conflict of Warranties Express or Implied

Warranties whether express or implied shall be construed as consistent with each other and as cumulative, but if such construction is unreasonable the intention of the parties shall determine which warranty is dominant. In ascertaining that intention the following rules apply:

(a) Exact or technical specifications displace an inconsistent sample or model or general language of description.

(b) A sample from an existing bulk displaces inconsistent general language of description.

(c) Express warranties displace inconsistent implied warranties other than an implied warranty of fitness for a particular purpose.

### § 2–318. Third Party Beneficiaries of Warranties Express or Implied.

A seller's warranty whether express or implied extends to any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of the section.

### § 2–715. Buyer's Incidental and Consequential Damages

(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

§ 2–719. **Contractual Modification or Limitation of Remedy**

(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.