JOURNAL ENTRY and OPINION
Appellants Alain and Karen Tanoh appeal a decision by the trial court granting summary judgment in favor of Appellees Star Bank, Rick Krupitzer, Ohio Farmers Insurance and Westfield Insurance Company on their claim for damages arising from the breach of a construction contract. The Tanohs assign the following three errors for our review:
 I. THE COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO STAR BANK SINCE IT IS A QUESTION OF FACT FOR THE JURY TO DECIDE WHETHER STAR BANK WAS GROSSLY NEGLIGENT IN DISBURSING ANY FUNDS FROM A CONSTRUCTION LOAN AGREEMENT WITHOUT FIRST OBTAINING THE REQUIRED AFFIDAVITS PER O.R.C. 1311.01. ALSO, IT IS A QUESTION OF FACT FOR THE JURY TO DECIDE WHETHER STAR BANK WAS NEGLIGENT IN HIRING KRUPITZER TO PERFORM THE INSPECTION WORK ON THE TANOH'S [sic] PROPERTY.
 II. THE COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO RICK KRUPITZER BECAUSE IT IS A QUESTION OF FACT FOR THE JURY TO DECIDE WHETHER THEY AGREE WITH THE TANOH'S [sic] ASSERTION THAT THEY WERE A THIRD PARTY BENEFICIARY TO THE CONTRACT BETWEEN STAR BANK AND KRUPITZER AND WHETHER KRUPITZER WAS NEGLIGENT WITH REGARD TO HIS DUTIES AS AN INSPECTOR.
 III. OHIO FARMERS INSURANCE AND WESTFIELD INSURANCE COMPANY ARE NOT ENTITLED TO SUMMARY JUDGMENT SINCE THERE ARE QUESTIONS OF MATERIAL FACTS ABOUT WHETHER THE TANOH'S [sic] WERE THIRD PARTY BENEFICIARIES TO THE CONTRACT BETWEEN OHIO FARMERS INSURANCE CO. AND STRAWBRIDGE, WHETHER THERE WAS COVERAGE AT THE TIME OF THE OCCURRENCE, AND WHETHER THE DAMAGE IS COVERED UNDER THE POLICY.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
On October 16, 1995, Alain and Karen Tanoh purchased a home located at 262 E. 150th Street. The sale price of the home was $54,900. The Tanohs decided to rehabilitate the home and obtained an estimate from appellee Rick Strawbridge dba Spirit Construction for renovation of the house. Strawbridge submitted a detailed estimate totaling $23,875. The Tanohs borrowed a total of $78,300 in the form of a construction loan from Star Bank to finance the purchase and renovation of the home. The loan documents provided that construction loan disbursements would be made in accordance with the following procedure:
 Disbursements of the Loan shall be made upon the written request of the Borrower in the form attached hereto as Exhibit A and the submission of an affidavit of the general contractor under applicable mechanic's lien laws satisfactory to the Lender, at the time and in the amount set forth below:
 1. One fourth (1/4) of the Loan when in the sole opinion of the Lender's inspector that the construction is 25% complete; and
 2. One fourth (1/4) of the Loan when in the sole opinion of the Lender's inspector that the construction is 50% complete; and
 3. One fourth (1/4) of the Loan when in the sole opinion of the Lender's inspector that the construction is 75% complete; and
 4. One fourth (1/4) of the Loan when in the sole opinion of the Lender's inspector that the construction is totally complete.
A Construction Loan Disclosure form signed by the Tanohs provided that there were three essential components to each disbursement — (1) a request from the Tanohs for disbursement of funds with an attached affidavit from the builder and supporting documentation listing the names of sub-contractors, material providers, and laborers and the amounts due to each; (2) an inspection of the work completed from the bank's appraiser which should support the amount of work completed as disclosed by the builder's affidavit; (3) an update of the title to the property from the bank title company to confirm that there were no mechanic's liens or adverse filings.
The Construction Loan Disclosure form also provided:
 In spite of what this procedure may suggest to you, IT IS YOUR RESPONSIBILITY TO SUPERVISE YOUR BUILDER'S WORK AND TO VERIFY THAT CONSTRUCTION IS BEING DONE IN ACCORDANCE WITH THE PLANS AND SPECIFICATIONS UNDER YOUR CONSTRUCTION CONTRACT AND TO YOUR SATISFACTION.
The Tanohs entered into a verbal agreement with appellee Rick Strawbridge dba Spirit Construction for rehabilitation of the home. The parties agreed on a price of $23,875 and agreed that much of the work on the house would be completed by December 1, 1995.
The Tanohs took possession of the home on October 16, 1995. Strawbridge began work on the Tanohs' home on November 15, 1995. As of December 1, 1995, the work had not been completed as agreed. Strawbridge failed to complete the following repairs: installation of new appliances in kitchen; updating of electrical system throughout house; painting of walls, refinishing of floors, installation of tile in kitchen and bathrooms, removal of washer and dryer hookups from kitchen, insulation of walls. On or after December 1, 1995, Strawbridge and Alain Tanoh entered into an agreement providing that work on the home would be completed by April 30, 1996. The Tanohs moved into the home on December 22, 1995.
Two construction loan disbursements totaling $15,500 were made to Spirit Construction in December 1995 and January 1996. The first disbursement of $7,500 was for work performed from November 15, 1995 to December 22, 1995. The second disbursement of $8,000 was for work performed from December 22, 1995 to January 4, 1995. For each disbursement, the Tanohs submitted a request form containing the following language:
 Borrower represents and warrants that I/we personally inspect the improvements upon the Property, and that quality of the work and materials, and/or the engineering of same, for which payment is hereby authorized, have been satisfactorily performed and/or supplied.
Each time, the form was accompanied by an affidavit from Strawbridge providing that he did not owe any amounts to any subcontractors and a single page report from Krupitzer in which he assessed the percentage of work that had been completed.
The Tanohs contacted an attorney in early 1996 because they were unsatisfied with Strawbridge's work. On March 11, 1996, the Tanohs' attorney sent a letter to Strawbridge demanding specific performance of the contract and detailing the numerous aspects of the work that had not been satisfactorily performed. As of April 30, 1996, Strawbridge had still not completed the renovations as agreed. The Tanohs told him they did not want to work with him anymore. On July 26, 1996, the Tanohs filed a complaint against Strawbridge and Spirit Construction for breach of contract. The Tanohs sought $49,317.40 in damages — the cost of completing the job.
The Tanohs later amended their complaint to add claims against Star Bank for negligent disbursement of the construction loan funds and for negligent hiring of Krupitzer. The Tanohs also added claims against Krupitzer as well as Ohio Farmers Insurance Co. (Spirit Construction's liability insurance carrier) and Westfield Insurance Company (the issuer of Spirit Construction's bond)
Summary judgment was later granted in favor of Star Bank, Krupitzer, Westfield, and Ohio Farmers. The case was called for trial against Strawbridge and Spirit Construction on February 2, 1999. Strawbridge and Spirit Construction failed to appear. After taking evidence, the trial court issued a judgment in favor of the Tanohs against Strawbridge and Spirit Construction in the amount of $49,317.40. This appeal followed.
In their first assignment of error, the Tanohs argue the trial court erred by granting summary judgment in favor of Star Bank where questions of fact existed as to whether the bank was grossly negligent in disbursing funds from a construction loan without first obtaining the affidavits required by R.C. 1311.01 and whether Star Bank was negligent in hiring Krupitzer to perform the inspection work on the Tanohs' property.
In its motion for summary judgment, Star Bank argued that the Tanohs could not show that it acted negligently in disbursing funds to the builder because each disbursement was made upon the Tanohs' written request and was supported both by the affidavit of the builder and the inspection of the bank's independent contractor. The bank also argued that the Tanohs' claim was barred because of the language in the construction loan disclosure agreement which provided that it was the Tanohs' responsibility to supervise the builder's work to ensure that the work was being done properly.
In response to the bank's motion, the Tanohs argued that the builder's affidavits were incomplete and incorrect and that the bank acted negligently when it approved the disbursements based upon the incorrect affidavits and the report of the inspector instead of requiring the submission of supporting documentation. The Tanohs conceded that the Request for Disbursement forms they submitted contained preprinted language indicating their satisfaction with the work, but maintained that they were not satisfied with the work and only submitted the forms because they "felt like they were in a corner because Defendant Strawbridge assured them he needed the money to complete the job." (Plaintiff's Brief Opp. Star Bank's Motion for Summary Judgment at 4.) The Tanohs further argued that they relied on the bank's expertise in evaluating the progress of the work and whether to make a disbursement.
The Tanohs' response to the motion for summary judgment and their brief before this court fail to address the provision in the construction disclosure form which provided that the Tanohs were responsible for supervising the builder's work and to verify that construction was being done in accordance with the plans and specifications and to the Tanohs' satisfaction. The Tanohs argued that the bank's use of an inspector caused them to believe that the bank would ensure that the work was proceeding properly. However, in an apparent effort to dissuade borrowers from such an assumption, the construction disclosure form specified that inspecting the builder's work was the borrowers' responsibility "in spite of what this procedure may suggest to you." (Construction Disclosure Form at 2.) The disclosure forms made clear that it was the Tanohs' responsibility to ensure that the work was progressing satisfactorily before requesting construction disbursements. Accordingly, their reliance on the inspector's report was not reasonable.
Furthermore, under Ohio law, a lender's liability for improper disbursements is limited to instances of gross negligence or fraud.
R.C. 1311.011 (B) (5) provides:
 When making any payment under the home construction contract, the lending institution may accept the affidavit of the original contractor required by division (B) (4) of this section and act in reliance upon it, unless it appears to be fraudulent on its face. The lending institution is not financially liable to the owner, part owner, purchaser, lessee, or any other person for any payments, except for gross negligence or fraud committed by the lending institution in making any payment to the original contractor.
Accordingly, in order to survive Star Bank's summary judgment, the Tanohs would have had to demonstrate gross negligence by the bank in disbursing the construction funds. See St. Henry Tile Co.v. Schleiger (Jan. 16, 1998), Darke App. No. 1431CA, unreported (R.C. 1311.011 (B) (5) limits a bank's liability for making any payments to a contractor to claims for fraud or gross negligence on the bank's part.)
Gross negligence is defined as the "failure to exercise any or very slight care" or "a failure to exercise even that care which a careless person would use." Thompson Electric, Inc. v. Bank One,Akron, N.A. (1988), 37 Ohio St.3d 259, 265; 525 N.E.2d 761, 768, citing Johnson v. State (1902), 66 Ohio St. 59, 67, 63 N.E. 607,609; Cleveland, C., C. I. Ry. Co. v. Elliott (1876), 28 Ohio St. 340,356-357; Payne v. Vance (1921), 103 Ohio St. 59, 133 N.E. 85; Prosser Keeton, Law of Torts (5 Ed. 1984) 212, Section 34.
We conclude that the Tanohs failed to establish a material issue of fact with respect to their negligence claim against Star Bank. The record makes clear that, before each disbursement, the Bank obtained the affidavits required by R.C. 1311.011. The Tanohs argued that the affidavits were incorrect and invalid. However, R.C. 1311.011 provides:
 When making any payment under the home construction contract or on behalf of the owner or part owner under a home purchase contract, the lending institution may accept the affidavit of the original contractor required by division (B) (4) of this section and act in reliance upon it, unless it appears to be fraudulent on its face.
See, also ERB Lumber Co. v. First Fed. S. L. Assn. of Lima
(1990), 67 Ohio App.3d 836, 843, 588 N.E.2d 935, 940. The Tanohs failed to present any evidence that the affidavits are facially invalid and our examination of the affidavits reveals nothing apparently fraudulent about the affidavits.
The Tanohs' failure to go forward with any evidence of gross negligence by Star Bank precluded a finding that the bank was liable for improper disbursement of the construction loan funds. Accordingly, the trial court did not err in granting Star Bank's motion for summary judgment.
The Tanohs also argue that the trial court erred in granting summary judgment in favor of the bank on their claim for negligent hiring. A plaintiff alleging negligent hiring must establish: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." Walters v. Hawken School (Jan. 28, 1999), Cuyahoga App. No. 75274, unreported, citing Ruta v. Breckenridge-RemyCo. (1982), 69 Ohio St.2d 66, 69, 430 N.E.2d 935. See, alsoSteppe v. K-Mart Stores (Nov. 18, 1999), Cuyahoga App. No. 74884, unreported.
Even if, construing the evidence most strongly in favor of the Tanohs, we assume that Krupitzer was incompetent because he miscalculated the degree of completion of the work, there is no evidence to support a finding that Star Bank knew or should have known of such incompetence. Krupitzer's inspection reports were buttressed by affidavits by the Tanohs and by the builder that the work was progressing satisfactorily. The documentation provided to the bank contained nothing that would put the bank on notice that Krupitzer was incompetent.
Furthermore, the Tanohs have not shown that any alleged negligence by Krupitzer or Star Bank proximately caused their injuries. As discussed above, the Tanohs expressly agreed that supervision of the builder's work was their responsibility. Accordingly, we are unable to conclude that the Tanohs have gone forward with evidence as to each of the elements necessary for a claim of negligent hiring. The Tanohs' first assignment of error is overruled.
In their second assignment of error, the Tanohs argue the trial court erred in granting summary judgment in favor of Krupitzer where questions of fact existed as to whether the Tanohs were third-party beneficiaries to the contract between Star Bank and Krupitzer and whether Krupitzer was negligent with regard to his duties as an inspector. This court recently held that only a party or an intended beneficiary may exert rights under a contract.Shaker Courts Condominium Unit Owners Assoc., Inc. v. IndustrialEnergy Systems, Inc. (Feb. 24, 2000), Cuyahoga App. No. 75378, unreported. See, also, Thornton v. Windsor House, Inc. (1991),57 Ohio St.3d 158, 161, 566 N.E.2d 1220, 1223, certiorari denied (1991), 502 U.S. 822, 112 S.Ct. 84, 116 L.Ed.2d 57.
 The so-called "intent to benefit" test provides that there must be evidence, on the part of the promisee, that he intended to directly benefit a third party, and not simply that some incidental benefit was conferred on an unrelated party by the promisee's actions under the contract. There must be evidence that the promisee assumed a duty to the third party. Norfolk W. Ry. Co. v. United States (C.A.6, 1980), 641 F.2d 1201.
Shaker Courts.
In terms of this case, in order to establish a material issue of fact as to whether they are third party beneficiaries to the contract between Star Bank and Krupitzer, the Tanohs would have to go forward with evidence that Star Bank, as promisee, intended to directly benefit them by its contract with Krupitzer. In light of the express provision in the construction loan disclosure form that the Tanohs were responsible for supervising the builder's work and verifying that the work was being done according to specifications, we conclude the Tanohs failed to present evidence indicating that Star Bank intended to benefit them by its contract with Krupitzer.
During oral argument, this panel posed several questions to both parties as to the application of Scott v. Walden (June 27, 1991), Pickaway App. Nos. 90-Ca-16, 90-CA-22, unreported, jurisdictional motions overruled (1991), 62 Ohio St.3d 1465,580 N.E.2d 786. In that case, the Scotts hired contractor James Walden to build them a new home. The Scotts then contacted N.L. Stevens Associates ("Stevens"), a mortgage broker, to help them obtain a construction loan. Stevens found a lender, Landmark Savings Association ("Landmark"), that agreed to enter into a loan agreement with the Scotts. Stevens informed the Scotts that the lender would not release any money to Walden until after an inspection of the property was performed. Stevens hired Arthur Nibert to perform the inspections. The record showed the inspections were performed and that Nibert signed draw sheets authorizing disbursements to Walden. Four disbursements were made. Three of the four draw checks were endorsed by the Scotts.
However, construction of the house was never completed and the Scotts filed suit against Stevens, Walden, Nibert, and Landmark Savings. Summary judgment was entered in favor of all defendants except Walden. On appeal, the court reversed and remanded the order of summary judgment in favor of Nibert concluding that a material issue of fact remained as to whether Stevens' contract with Nibert was intended to benefit the Scotts. The court held that "[t]he trier of fact must be left to determine whether Stevens' statements to Mr. Scott that no money would be released without inspection are sufficient evidence to show an intent by Stevens to benefit [the Scotts]." Id.
Here, however, the facts are quite different. As part of the bank's contract with the Tanohs, the construction loan disclosure form specifically provided that it was the Tanohs' responsibility to inspect the builder's work. In light of the construction disclosure form's express provision that the Tanohs were responsible for inspecting the builder's work despite what the disbursement procedure might suggest to them, we find that no reasonable juror could find that the bank intended to directly benefit the Tanohs by hiring Krupitzer to inspect the property.
Each disbursement of funds was initiated by a signed request from the Tanohs. Each request included an averment by the Tanohs that they personally inspected the property and that the work was satisfactorily performed. The Tanohs cannot now claim that the bank should have protected them from themselves. Accordingly, no material issue of fact existed as to whether the Tanohs were third party beneficiaries of the bank's contract with Krupitzer.
In order to prevail on their negligence claim against Krupitzer, the Tanohs had to establish that Krupitzer owed them a duty, that he breached that duty, and that the breach proximately caused their injuries. See Chambers v. St. Mary's School (1998),82 Ohio St.3d 563, 565, 697 N.E.2d 198, 200, reconsideration denied (1998), 83 Ohio St.3d 1453, 700 N.E.2d 334; Westfield Ins. Co. v.Huls Am. Inc. (1998), 128 Ohio App.3d 270, 284, 714 N.E.2d 934,942, appeal dismissed (1998), 83 Ohio St.3d 1460, 700 N.E.2d 877. In this case, there was no agreement between the Tanohs and Krupitzer that would give rise to a duty. Furthermore, as discussed above, because the Tanohs failed to establish a material issue of fact as to whether they were third party beneficiaries of the bank's contract with Krupitzer, they cannot recover damages for any alleged negligence by Krupitzer. The Tanohs' second assignment of error is without merit.
In their third assignment of error, the Tanohs argue that the trial court erred in granting summary judgment in favor of Ohio Farmers Insurance and Westfield Insurance where questions of fact existed as to whether the Tanohs were third party beneficiaries to the contract between Ohio Farmers Insurance and Strawbridge, whether there was coverage at the time of the occurrence, and whether the damage was covered under the policy. We disagree.
Contrary to the statement made in the Tanohs' brief, the construction of an insurance contract is a question of law. StateAutomobile v. Dolosich (Nov. 4, 1999), Cuyahoga App. No. 75060, unreported, citing Hybud Equip. Corp. v. Sphere Drake Ins. Co.,Ltd. (1992), 64 Ohio St.3d 657, 597 N.E.2d 1096, certiorari denied (1993), 507 U.S. 987, 113 S.Ct. 1585, 123 L.Ed.2d 152 and Alexanderv. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 374 N.E.2d 146. See, also Gomolka v. State Auto. Mutl. Ins. Co. (1982), 70 Ohio St.2d 166,167-168, 436 N.E.2d 1347. Furthermore, "a standard liability insurance policy is not a contract for the benefit of a third person. The contract is made with the intention of benefitting the insured, not someone whom he injures." Reynolds v.Lake Mohawk Property Owners' Association, Inc. (March 31, 1989), Carroll App. No. 552, unreported, citing Chitlik v. Allstate Ins.Co. (1973), 34 Ohio App.2d 193, 299 N.E.2d 295, at paragraph one of the syllabus.
We also reject the Tanohs' claim that they were third party beneficiaries of the contract between Ohio Farmers and Strawbridge. The Tanohs base their argument on the fact that the bond issued by Ohio Farmers was intended to ensure compliance with Cleveland's building code and the Tanohs were cited for building code violations as a result of Strawbridge's work. While a liability insurance carrier may have a duty outside the terms of its insurance contract to deal in good faith with the public, including those persons injured by the actions of its insured, such duty does not create an independent cause of action that may be enforced by the injured party through a direct action against the insurance carrier. Secrest Trucking, Inc. v. Szerzinski (Jan. 25, 1988), Stark App. No. CA-7298, unreported. See also Braswell v. Duncan
(Nov. 26, 1997), Cuyahoga App. No. 72038, unreported. ("An insurance company's liability is derivative only.")
 We therefore hold that personal injury actions must first be brought by the injured party against the alleged tortfeasor. He is the one whose wrongdoing is alleged to have caused the injury, and if the facts are found as alleged, he will be primarily liable. Further, the policy of excluding any reference to the existence of insurance in an action to determine liability for personal injury would be circumvented by permitting the injured person to sue the insurance company and could I constitute a prejudicial or harmful effect against the insurer.
Chitlik, 34 Ohio App.2d at 197-198, 299 N.E.2d at 298.
The Tanohs' third assignment of error is overruled. Finding no merit to any of the Tanohs' assignments of error, we affirm the decision of the trial court.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JOHN T. PATTON. P.J., and KENNETH A. ROCCO, J., CONCUR.
 __________________________ PATRICIA ANN BLACKMON JUDGE