[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 103.]

WIREMAN, ADMINISTRATOR, ET AL., APPELLANTS, *v*. KENECO DISTRIBUTORS,

INC., ET AL.; MARATHON OIL COMPANY ET AL., APPELLEES.

[Cite as *Wireman v. Keneco Distributors, Inc*., 1996-Ohio-152.]

*Torts—Wrongful death—Products liability—"Product" as used in R.C. 2307.71,*

*construed and applied—Failure to warn—R.C. 2307.76, applied.*

(No. 94-1448—Submitted October, 1995—Decided March 4, 1996.)

APPEAL from the Court of Appeals for Wood County, No. 93WD 078.

_____

{¶ 1} Appellant, Peggy Wireman, is the administrator of the estate of her late husband, Douglas E. Wireman. On August 24, 1990, Douglas Wireman was working in a bulk gasoline storage tank near Portage, Ohio, when the tank exploded. Douglas Wireman died two days later from the injuries he sustained in this explosion.

{¶ 2} Appellee Marathon Oil Company ("Marathon") originally installed the storage tank in which Douglas Wireman suffered his fatal injuries. The tank was placed at the Portage site when Marathon converted one of its service stations to a bulk plant. In 1980, Marathon designed and had installed a vapor recovery system ("VRS") for gasoline storage tanks at the Portage site. The purpose of this system was twofold. The first purpose of the VRS was that it allows petroleum vapor pressure to balance among connected storage tanks—thus, reducing the chances that fumes would be released into the atmosphere due to high vapor pressure. The second purpose of the VRS was that it prevented gasoline vapors from entering the environment during the loading and unloading of petroleum products.

{¶ 3} In 1988, Marathon leased the Portage plant to Keneco Distributors, Inc. ("Keneco"). The following year, Marathon sold the plant to Keneco's land-

holding corporation, KDI Properties, Inc. Keneco contracted with Marathon to continue to use the plant to distribute Marathon products.

{¶ 4} During the late spring of 1990, Keneco sought to extend the life of its above-ground storage tanks and reduce the possibility of a petroleum spill into a branch of the nearby Portage River. To this end, Keneco hired Interdyne Corporation to clean the tanks and fiberglass the bottom and part of the interior walls. Interdyne, in turn, hired K-M Contracting, Inc. ("K-M") to sandblast the tanks and to actually install the fiberglass material. It appears K-M, in turn, hired Aerco Sandblasting, Inc., to sandblast the tank's interior walls.

{¶ 5} On the morning of August 24, 1990, a Northwest Enterprises, Inc. transport truck delivered approximately eight thousand five hundred gallons of gasoline to the Portage bulk plant. The transport truck's driver, Steve Freymuth, did not utilize the vapor recovery system at the plant because he had been told by Keneco employees that it was inoperative.

{¶ 6} Shortly following the tanker's departure, K-M employees, brothers Robert and Douglas Wireman, arrived at the plant for the purpose of installing the fiberglass material in four of the plant's tanks. These tanks were to have previously been prepared for the installation. They were to have been powerwashed and sandblasted, and the resulting debris was to have been removed by Interdyne and Aerco. However, when Douglas Wireman examined the interior of tank 101, he discovered sand on the floor. Because the fiberglass material could not be installed over the sand, Douglas Wireman borrowed a common Black and Decker shop vac and an extension cord from Keneco employees.

{¶ 7} When Douglas Wireman started the shop vac inside tank 101, an explosion took place which separated the tank's lid from its sides at the weld. Douglas Wireman died of the injuries he received in the blast.

{¶ 8} Following Douglas Wireman's death, appellants, Peggy Wireman as administrator of his estate and individually as his wife, brought this wrongful death

2

suit. Appellants alleged that the failure of the transport driver to utilize the vapor recovery system during the delivery of eight thousand five hundred gallons of gasoline displaced gasoline vapors into the VRS which relayed these explosive vapors into tank 101. It was these vapors that were ignited by the spark from Douglas Wireman's shop vac, causing the explosion that killed him. Appellants' suit named ten corporations and individuals as defendants alleging a variety of negligent acts among them. Included among these defendants were the petroleum transport company, appellees Northwest Enterprises, Inc., d.b.a. Northwest Oil Co., Northwest Enterprises' president, appellee Harold Jackson, Jr., and its driver, appellee Steve Freymuth. Appellants also sued the decedent's employer, appellee K-M Contracting, Inc. and its president and sole stockholder, appellee Kevin L. Everhardt. Appellee Marathon Oil Company was another named defendant.

{¶ 9} In the trial court, appellees Northwest Enterprises, Inc. (Northwest Oil, Inc.), Jackson, Freymuth, Everhardt and Marathon Oil Company moved for and were granted summary judgment. The trial court's determined that, pursuant to Civ.R. 54(B), that there was no just cause for delay.

{¶ 10} The Court of Appeals for Wood County affirmed the trial court's award of summary judgment.

{¶ 11} This matter is now before this court upon the allowance of discretionary appeal.

_____

*Mihlbaugh & Mihlbaugh, Michael P. Mihlbaugh* and *Robert H. Mihlbaugh* for appellants.

*Shumaker, Loop & Kendrick, John C. Barron, Thomas P. Dillon* and *Jeffrey S. Creamer*, for appellee Marathon Oil Company.

*Hammond Law Office* and *Frederick A. Sewards*, for appellees Northwest Enterprises, Inc., Freymuth and Jackson.

*John K Fitch,* urging reversal for *amicus curiae*, Ohio Academy of Trial Lawyers.

———————————

**PFEIFER, J.**

{¶ 12} Appellants contend that Wireman was fatally injured when he was negligently instructed to use a shop vac to clean tank 101. Appellants contend that the explosion of tank 101 was caused by a spark from the shop vac igniting gasoline vapors in the tank. Appellants claim that the gasoline vapors flowed into tank 101 through a pipe in the VRS that connects tank 101 to an adjoining tank. Appellants contend that Marathon's design of the VRS was defective because it allowed this flow of fumes. On the morning of Wireman's fatal injury, an adjoining tank had been filled with gasoline by an employee of Northwest. Appellants contend that if the VRS had been used as designed during the delivery of gasoline from the Northwest truck into the adjoining tank, the fumes from the gasoline being pumped into the tank would have been returned to the Northwest truck and would not have gone into tank 101.

{¶ 13} Appellants contest the trial court's award of summary judgment to Marathon, Freymuth, Northwest and Jackson.

I

Claims against Marathon

A

Products Liability

{¶ 14} The court of appeals upheld the trial court's award of summary judgment for Marathon because it found that the VRS was not tangible personal property as defined in R.C. 2307.71, and, thus, appellant could not pursue a products liability claim against Marathon. R.C. 2307.71 provides in relevant part:

"As used in sections 2307.71 to 2307.80 of the Revised Code:

"* * *

"(L)(1) 'Product' means, subject to division (L)(2) of this section, any object, substance, mixture, or raw material that *constitutes tangible personal property* * * *." (Emphasis added.)

{¶ 15} Under this definition, an item must be personal property before it can fall within the realm of products liability. The court of appeals found the VRS to be a fixture. Because we find that the VRS is not a fixture, we hold that the VRS is personal property.

{¶ 16} In *Teaf v. Hewitt* (1853), 1 Ohio St. 511, this court adopted the following definition of fixtures:

"A fixture is an article which was a chattel, but which by being physically annexed or affixed to the realty, became accessory to it and part and parcel of it. But the precise point in the connection with the realty, where the article loses the legal qualities of a chattel and acquires those of the realty, often presents a question of great nicety and sometimes difficult determination." *Id.* at 527.

"From the examination which I have been enabled to give to this subject, and after a careful review of the authorities, I have reached the conclusion that the united application of the following requisites will be found the safest criterion of a fixture.

"1st. Actual annexation to the realty, or something appurtenant thereto.

"2d. Appropriation to the use or purpose of that part of the realty with which it is connected.

"3d. The intention of the party making the annexation, to make the article a permanent accession to the freehold -- this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made." *Id.* at 529-530.

{¶ 17} Appellants contend that the VRS does not meet the third prong of this definition. Because we find that there was never an intention to make the VRS

a permanent accession to the freehold where it was being used, we agree with appellants.

{¶ 18} The record is clear that Marathon lacked the requisite intent to make the VRS a permanent addition to the bulk plant. The VRS was attached to four aboveground storage tanks. On October 3, 1989, Marathon sold the tanks along with the VRS by a bill of sale, pursuant to an earlier agreement to an offer to purchase. It is a long-standing rule of law that when property is sold by bill of sale, the property is presumed to be personalty. See *Fortman v. Goepper* (1863), 14 Ohio St. 558.

{¶ 19} Also, in the offer to purchase agreed to by Marathon and Keneco, there is a provision obligating Keneco to remove the aboveground storage tanks if removal is required by law. Thus, Marathon never intended that those tanks and attached VRS be a permanent part of the premises where they rested. Finally, a bill of sale for similar, tanks on the premises, which was agreed to by Marathon, classified those tanks as personal property.

{¶ 20} For these reasons we find that the VRS was personal property when Wireman was fatally injured. Thus, the court of appeals erred when it concluded that the VRS was a fixture, and its judgment concerning this legal issue is reversed.

B

Failure to Warn

{¶ 21} Appellants claim that the court of appeals erred when it upheld the trial court's award of summary judgment to Marathon on appellants' failure-to-warn claim. We agree with appellants that their failure-to-warn claim should survive Marathon's motion for summary judgment.

{¶ 22} Appellant's theory of liability is that Marathon failed to post a warning for the benefit of those entering the tank. Presumably, such a warning would state that petroleum vapors might be present in the tank, due to the connections between the four aboveground tanks, even if no fuel is present in the

tank being entered. This claim was not addressed by the court of appeals in its opinion.

{¶ 23} R.C. 2307.76 regulates failure-to-warn claims. The statute provides:

"(A) Subject to divisions (B) and (C) of this section, a product is defective due to inadequate warning or instruction if either of the following applies:

"(1) It is defective due to inadequate warning or instruction at the time of marketing if, when it left the control of its manufacturer, both of the following applied:

"(a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;

"(b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm."

{¶ 24} We find the record contains sufficient evidence supporting appellants' failure-to-warn claim. It is undisputed that Marathon never posted a warning on the side of tank 101 or on the VRS which indicated that fumes may be present in the tank that Douglas Wireman entered.

{¶ 25} Marathon appears to argue that appellants are precluded from bringing a failure-to-warn claim because Marathon claims that the VRS is not a "product" under R.C. 2307.76. Because R.C 2307.76 the uses the definition of "product" in R.C. 2307.71, and because we have already determined that the VRS is a product pursuant to R.C. 2307.71, we hold that appellants' failure-to-warn claim is sufficient to survive a motion for summary judgment. We reverse the judgment of the court of appeals on this issue.

C

Premises Liability

**{¶ 26}** Appellants also claim that the trial court erred when it granted Marathon's motion for summary judgment because the record contains sufficient evidence that Marathon intentionally violated the terms of its permit to operate. The permit provides in relevant part:

"Any malfunction of this source or any associated air pollution control system(s) shall be reported immediately to the appropriate Ohio EPA field office in accordance with OAC rule 3745-15-06. Except as provided in that rule, any scheduled maintenance or malfunction necessitating the shut down or bypassing of any air pollution control system(s) shall be accompanied by the shut down of this source."

**{¶ 27}** Appellants contend that Marathon should have shut down the bulk plant as soon as it discovered that loading arm of the VRS was not operating correctly. If the plant had been shut down by Marathon, appellants contend, Wireman would have never been injured.

**{¶ 28}** The problem with appellants' argument is that Marathon was powerless to shut down the bulk plant. It is a fundamental tenet of premises tort law that to have a duty to keep premises safe for others one must be in possession and control of the premises. *Wills v. Frank Hoover Supply* (1986), 26 Ohio St.3d 186, 26 OBR 160, 497 N.E.2d 1118. Therefore, we affirm the judgment of the court of appeals on this issue.

D

Agency

{¶ 29} Appellants contend that the court of appeals erred when it upheld the trial court's award of summary judgment to Marathon for appellants' agency claim. We disagree with appellants.

{¶ 30} In essence, appellants argue that the employees of Keneco who negligently directed Douglas Wireman to use a shop vac in tank 101 appeared to Wireman to be agents of Marathon. Thus, Marathon should be liable for the Keneco employees' negligence. See *Shaffer v. Maier* (1994), 68 Ohio St.3d 416, 627 N.E.2d 986. We decline to consider this issue, however, because it was not raised by appellants in the court of appeals and has been waived.

II

Claims against Northwest, Jackson and Freymuth

{¶ 31} Appellants contend that the trial court erred when it granted the motion for summary filed by Northwest, Jackson and Freymuth. Appellant's theory of liability is that Freymuth violated Ohio Adm. Code 3745-21-09 (V)(1)(i) when he failed to use the VRS as he was unloading his tanker truck at the bulk plant. The regulation provides:

"No gasoline tank truck is to be used for the transfer of gasoline at a bulk gasoline terminal, bulk gasoline plant or gasoline dispensing facility that employs a vapor balance system or vapor control system unless the transfer is done in a manner that ensures the proper operation of the vapor balance system or vapor control system."

{¶ 32} Appellant contends that because Freymuth violated this section of the code, he, his employer, Northwest, and the president and sole shareholder of Northwest, Jackson, were all negligent *per se*. We disagree.

{¶ 33} Where an enactment imposes upon a person a specific duty for the protection of others, his failure to observe that duty constitutes negligence *per se*.

*Taylor v. Webster* (1967), 12 Ohio St.2d 53, 56, 41 O.O.2d 274, 275, 231 N.E.2d 870, 872.

{¶ 34} In order to determine whether a violation of Ohio Adm. Code 3745-21-09 constitutes negligence *per se*, we must first determine whether this Administrative Code provision was intended to affect the duties owed for the safety and protection of others. See *Hernandez v. Martin Chevrolet Inc.*(1995), 72 Ohio St.3d 302, 649 N.E.2d 1215.

{¶ 35} An examination of the code provision reveals that it is an environmental regulation intended to prevent the emissions of fumes into the atmosphere. The code provision is entitled, "Control of emissions of volatile organic compounds from stationary sources." Thus, the Administrative Code provision that Freymuth allegedly violated may impose on Marathon a duty to refrain from releasing fumes into the atmosphere. Appellants do not contend that Douglas Wireman was injured by a release of fumes from the VRS into the atmosphere. Therefore, Douglas Wireman's injury was not caused by any breach of any duty created by the Administrative Code provision. We affirm the judgment of the court of appeals on this issue. This cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

DOUGLAS, RESNICK and F.E. SWEENEY, JJ.,
MOYER, C.J., WRIGHT and COOK, JJ., dissent.

_____

**COOK, J., dissenting.**

{¶ 36} I respectfully dissent from that portion of the majority's opinion that reverses the summary judgment granted in favor of Marathon Oil Co. ("Marathon") on issues related to strict products liability and failure to warn. In arriving at its

conclusion that summary judgment was improperly awarded to Marathon at the trial court level, the majority appears to bypass the primary step of determining whether Marathon is a manufacturer of vapor recovery systems ("VRS") within the meaning of R.C. 2307.71(I). Because the evidence placed before the trial court compels a conclusion that Marathon is not a manufacturer of VRS within the meaning of R.C. 2307.71(I), I would affirm the appellate court's opinion in all respects.

{¶ 37} As defined in R.C. 2307.71(I), a "manufacturer" is "a person *engaged in a business* to design, formulate, produce, create, make, construct, assemble or rebuild a product or a component of a product." (Emphasis added.) The language employed in R.C. 2307.71(I) is directly imported from Section 402A of the Restatement of Torts 2d (1965) 347-348, and is consistent with the Restatement's public policy designs.

{¶ 38} In supplying the requirement that one must be "engaged in a business" in order to be classified as a manufacturer and concomitantly to become subject to the particularized liability scheme of R.C. 2307.71 through 2307.80, it is clear that the legislature intended to exclude the occasional seller. The public policy rationale that supports the imposition of particularized burdens upon manufacturers of products evinces an intent to allocate the costs of accidental injuries caused by defective products intended for resale upon those who launch such products into the marketplace. Such manufacturers are expected to stand behind their product and may insure against this potential liability and treat the same as a cost of production. See Comments *c* and *f* to Section 402A of the Restatement of Torts 2d, *supra*, at 349-351. Such policy considerations are clearly inapplicable to an occasional seller, by whom sale of a product is isolated and merely incidental to the business in which it is engaged.

{¶ 39} The unrebutted evidence placed before the trial court was that Marathon designed the VRS unit in question solely for use at four bulk plants

owned and operated by Marathon. No evidence was before the trial court that Marathon ever sold or offered the VRS unit or VRS design for sale other than in connection with a sale or disposition of the bulk plants wherein the VRS unit originally had been installed. In the absence of any evidence demonstrating that Marathon's design, construction and eventual sale of the VRS unit to Keneco was anything but incidental to an occasional bulk sale of one of its plants, I believe that the majority's further analysis related to Marathon's asserted liability under R.C. 2307.71 through 2307.80 is unwarranted.

{¶ 40} Accordingly, I would affirm the appellate court's opinion in all respects.

MOYER, C.J., and WRIGHT, J., concur in the foregoing dissenting opinion.

_____