FEDERAL INSURANCE COMPANY, INC., Appellant and Cross–Appellee,

v.

HPG INTERNATIONAL, INC., Appellee and Cross–Appellant.

[Cite as *Fed. Ins. Co., Inc. v. HPG Internatl., Inc.* (2001), 143 Ohio App.3d 450.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–1125.

Decided May 31, 2001.

*Ulmer & Berne, LLP, Richard E. Rubenstein, Thomas L. Rosenberg* and *Jeffery J. Sniderman*; *Zelle, Hofmann, Voelbel & Gettee, LLP,* and *Steven J. Badger,* for appellant.

*Lane, Alton & Horst,* and *Joseph A. Gerling; Pepper, Hamilton & Scheetz, Kenneth H. Zucker* and *Michael S. Hino,* for appellee.

---

SUSAN BROWN, Judge.

Federal Insurance Company, Inc., plaintiff-appellant, appeals a decision of the Franklin County Court of Common Pleas granting a motion for summary judgment in favor of HPG International, Inc., defendant-appellee.

In November 1983, a roof covering was installed on a building owned by Huntington Bancshares, Inc. ("Huntington"), located in Columbus, Ohio. The brand of roof covering was Trocal, and the manufacturer of the roof covering was Dynamit Nobel of America, Inc. (Appellee is the successor in interest to Dynamit Nobel of America.) According to the product brochure, Trocal roof covering consists of "an elastomeric sheet that covers the entire roof continuously from edge to edge. * * * Trocal is seamed into a homogeneous skin which is fastened to the deck only at roof edges and roof interruptions." This created a one-piece loose membrane over the entire roof surface, and gravel was applied over the membrane to protect it. The Huntington building's roof area is approximately two acres.

On January 19, 1997, security at Huntington reportedly heard some noises coming from the roof of the building. When water began dripping inside the building, Huntington employees had to cover computers and other sensitive equipment with plastic for protection. An examination of the roof showed that portions of the roof covering had "shattered."

On January 19, 1999, appellant filed a complaint against appellee. Appellant stated in their complaint that since they insured Huntington's building, they were an assignee and subrogee of Huntington's rights concerning the roof. Appellant

alleged in its complaint that the roof shattered because of a product defect. Appellant alleged that the defect consisted of the roof membrane suffering "a loss of plasticyzer component in its formulation which resulted in a decrease of elasticity in the roof membrane." Appellant claimed that this lack of elasticity caused the roof membrane to become "rigid and brittle, eventually fragmenting and shattering throughout the entire area of the Roof." Appellant argued that the shattering caused "substantial tangible physical damage to the Facility" and "substantial tangible physical damage to Huntington's personal property located at or inside the Facility."

In its complaint, appellant alleged causes of action for (1) the product's being defective in manufacture or construction pursuant to R.C. 2307.74, (2) appellee's failing to exercise ordinary care to warn Huntington about the danger of the Trocal roof-shattering pursuant to R.C. 2307.75, (3) appellee's negligently failing to warn Huntington about the danger of the Trocal roof shattering, and (4) appellee's making false and misleading statements and representations pursuant to common law and R.C. 2307.77. Appellant requested a judgment in the amount of $1,431,471.29.

On January 31, 2000, appellee filed a motion for summary judgment. Appellee argued that appellant could not bring a claim under the product liability provisions of R.C. 2307.71 *et seq.*, because the roof membrane was not a product. Appellee also argued that appellant's claims were time-barred and that Huntington had assumed the risk that the roof could fail. The trial court sustained appellee's motion for summary judgment on July 28, 2000, holding that appellee was entitled to summary judgment for all causes of action stated in appellant's complaint. Appellant appeals this decision and presents the following assignment of error:

"The trial court erred in granting defendant–appellee's motion for summary judgment and dismissing all claims asserted by plaintiff–appellant."

Appellant argues in its sole assignment of error that the trial court erred in sustaining appellee's motion for summary judgment. Appellant argues that (1) the Trocal roof system was a product as defined by R.C. 2307.71(L), (2) appellant's claims are not time-barred, and (3) representations made concerning Trocal roofs are actionable. We will address the issues that appellant has raised in the order we have presented them.

Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 203–204; *Dillion v. Univ.*

*Optical* (May 3, 2001), Franklin App. No. 00AP–1055, unreported, 2001 WL 460877.

Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, 1131–1132. "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." *Hannah v. Dayton Power & Light Co.* (1998), 82 Ohio St.3d 482, 485, 696 N.E.2d 1044, 1046. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Baker v. Buschman Co.* (1998), 127 Ohio App.3d 561, 566, 713 N.E.2d 487, 490.

R.C. 2307.73 allows a manufacturer to be subject to liability for compensatory damages based on a product liability claim. The product liability claim may be based on the product being defective (1) in manufacture, construction, design or formulation pursuant to R.C. 2307.74 and 2307.75, (2) due to inadequate warning or instruction pursuant to R.C. 2307.76, or (3) because it did not conform to a representation made by the manufacturer pursuant to R.C. 2307.77. R.C. 2307.73(A)(1). In order to fall within the realm of product liability as contained in R.C. 2307.71 *et seq.*, an item must be personal property pursuant to the definition provided in R.C. 2307.71(L). *Wireman v. Keneco Distributors, Inc.* (1996), 75 Ohio St.3d 103, 105–106, 661 N.E.2d 744, 746–747. R.C. 2307.71(L) states:

"(1) 'Product' means, subject to division (L)(2) of this section, any object, substance, mixture, or raw material that constitutes tangible personal property and that satisfies all of the following:

"(a) It is capable of delivery itself, or as an assembled whole in a mixed or combined state, or as a component or ingredient.

"(b) It is produced, manufactured, or supplied for introduction into trade or commerce.

"(c) It is intended for sale or lease to persons for commercial or personal use.

"(2) 'Product' does not include human tissue, blood, or organs."

An example of an item found to be a "product" pursuant to R.C. 2307.71(L), is a vapor recovery system for a bulk gasoline storage tank. See *Wireman, supra.* In *Wireman*, the court found that the vapor recovery system was a product because the owner never intended it to be a "permanent accession to the freehold where it was being used" and "never intended that those tanks and attached [vapor recovery system] be a permanent part of the premises where they rested." *Id.* at 106, 661 N.E.2d at 747. An example of items found not to be products

pursuant to R.C. 2307.71(L) are the foundation footers for a building. See *Unger v. Grundish* (Sept. 18, 2000), Hocking App. No. 00 CA 03, unreported, 2000 WL 1354396. Additionally, a "product" within the meaning of R.C. 2307.71(L)(1) does not include a fixture. *Id.* " 'A fixture is an article which was a chattel, but which by being physically annexed or affixed to the realty, became accessory to it and part and parcel of it.' " *Wireman*, 75 Ohio St.3d at 106, 661 N.E.2d at 747, quoting *Teaff v. Hewitt* (1853), 1 Ohio St. 511, 1853 WL 54.

■ In the present case, the Trocal roof system was installed in order to prevent water from seeping into the Huntington building. The brochure for the roof system states that it consists of a synthetic stretchable sheet which is "loosely laid" over the "entire roof continuously from edge to edge." The sheet is fastened to the roof "only at roof edges and roof penetrations. This creates a one piece loose membrane over the whole surface of the roof which allows separate substructure movement without compromise to the watertightness of the system." The sheet is then covered with gravel to hold it in place. Concerning how long the roof system is to remain in place, the brochure states:

"There's usually no need to tear up or dispose of the old roof— a difficult problem today. With Trocal the new roof can often be laid over the existing roof. Should an additional story have to be added at a later date, the original Trocal roof can be rolled up and installed on the new roof platform, saving the expense of an entire new roof."

A review of the evidence shows the Trocal roof system is a product pursuant to R.C. 2307.71(L): (1) the roof system is an object that constitutes tangible personal property, (2) it was delivered to Huntington and assembled in a combined state, (3) it was produced, manufactured, and supplied for introduction into trade or commerce, and (4) it was sold to Huntington for commercial use. The fact that the roof system was not attached to the roof and could be "rolled up and installed on [a] new roof platform" indicates that it is similar to the type of vapor recovery system that was found to be a product by the Ohio Supreme Court in *Wireman*.

We also note that in *Wilson v. Kelly Energy Sys., Inc.* (Oct. 7, 1992), Hamilton App. Nos. C–910589 and C–910510 unreported, 1992 WL 277074, the appellate court reviewed a defective product claim involving a roof system similar to the one in the present case. In *Wilson*, the purpose of the roofing system was "to effect a watertight condition on the roof." Although the court did not specifically address whether the roofing system was a product pursuant to R.C. 2307.71(L), the court upheld a jury verdict finding that the roofing system was a defective product pursuant to R.C. 2307.73. Accordingly, after having construed the evidence in favor of appellant, we find that the trial court erred when it concluded the roof was a fixture and not a product.

■ The trial court relied upon its findings that the roof covering was a fixture to conclude appellant's product liability claim was "barred by the applicable statute of limitations." Suits for personal property damage caused by an allegedly defective product are controlled by the statute of limitations contained in R.C. 2305.10. *Sun Refining & Marketing Co. v. Crosby Valve & Gage Co.* (1994), 68 Ohio St.3d 397, 398, 627 N.E.2d 552, 554. R.C. 2305.10(A) states that these actions "shall be brought within two years after the cause of action accrues."

Appellee argues that appellant's claims should be barred by the statute of limitations because Huntington knew about the shattering problem ·more than two years before appellant filed its complaint on January 19, 1999. As proof that Huntington was aware of the potential shattering problem, appellee submitted as evidence a letter sent to Huntington dated November 20, 1996, addressed to Ms. Sherri Able, stating that the "purpose in writing is to inform you that non-reinforced Trocal Roofing Membranes may fail under the influence of some weather conditions." The letter further states:

"It is known that non-reinforced PVC roof membranes, ballasted and unballasted, may experience a 'shattering phenomenon,' rendering the roof ineffective as a barrier against the elements. Although the conditions which lead to shattering are uncertain, most shatters have occurred during cold weather or sudden temperature changes. Non-reinforced TROCAL membranes have also failed in hailstorms and under other weather conditions, such as significant wind.

"The vast majority of non-reinforced Trocal membranes have performed without shattering and, during all times that the membranes were sold in the U.S., they met or exceeded all industry standards."

In response to the letter, appellant filed an affidavit from Scherry Dolan, formerly known as Scherry Abel, in which she stated that she did not recall receiving a letter dated November 20, 1996, addressed to Ms. Sherri Able. She also stated that she was employed by Huntington in their purchasing department from July 1996 through September 1999, and during that time, she did not recall receiving any correspondence from appellee.

■ A review of the letter and Dolan's affidavit shows there is a question of fact concerning whether Huntington received the letter and/or had notice of the "shattering phenomenon." As stated by appellant in its memorandum *contra* appellee's motion for summary judgment:

"[W]ith respect to the November 20, 1996 generic form letter addressed to Sherri Able, [appellee] has failed to establish that the letter was sent, or assuming *arguendo* that the letter was in fact sent, the date on which it was sent,

if it was received, and, if received, whether it was received prior to the date on which the roof shattered."

Additionally, a review of the letter shows that it only raised the possibility that Huntington's roof "may experience a 'shattering phenomenon,'" giving an assurance that the "vast majority of non-reinforced Trocal membranes have performed without shattering."

Appellee also submitted other evidence, which it claims supports its theory that Huntington knew about the shattering phenomenon more than two years prior to the time that the complaint was filed. Bert Murvay, property manager of the Huntington building, stated in his deposition that he wanted the capital budget for the building in 1996 to include the cost of a new roof because the roof was experiencing "constant leaks." However, a review of Murvay's deposition shows that the sources of the leaks were problems unrelated to the shattering phenomenon. For example, Murvay stated that he would find "a spot where [the roof covering] was torn or the wind had moved the roof or something." He also stated that one hole was caused by a bullet that landed on the roof one New Year's Eve. Murvay further stated that Greg Bush, a roofing contractor, had raised concerns about the longevity of the Trocal roof. Murvay also stated that he did not know if Bush had ever used the term "shatter."

Accordingly, after having reviewed the complete record, we find that summary judgment was improper if it was based upon a finding that appellant knew about the shattering problem more than two years prior to the complaint being filed. Appellant presented sufficient evidence to show that there is a question of fact concerning this issue.

The trial court also found that appellant had failed to establish that it had a sustainable claim of negligent misrepresentation. Appellant claimed that the roof system was defective because it did not conform to representations made by the manufacturer pursuant to R.C. 2307.73(A)(1). The misrepresentations that appellant claims were actionable as stated in its complaint are that the Trocal roof system (1) "was a high quality roof system", (2) "would remain leak-free", (3) "was a suitable replacement", and (4) "resists thermal shock due to radical temperature fluctuations."

These claims match the misrepresentation claims reviewed by this court in *Westfield Ins. Co. v. HULS Am., Inc.* (1998), 128 Ohio App.3d 270, 293, 714 N.E.2d 934, 948–949. In *Westfield,* we found that summary judgment was appropriate for a claim based upon these alleged misrepresentations, finding:

"The warranty did not represent the TROCAL roof as anything other than a roof that would remain watertight throughout the warranty, absent any defect. The warranty in question limits the warranty to the repair of the roof during the

warranty period and states that the 'warranty is solely intended to cover any condition caused by defective TROCAL Brand material.' Clearly, the possibility that the TROCAL roof could contain a defect is indicated by the warranty. Further, there is no reflection in the record that appellee represented the roof as one that would last for more than ten years. There is no indication that appellee misrepresented its TROCAL roof with regard to its properties, or that the roof failed to conform to the representations made. * * * Appellants have, therefore, not shown that they have a sustainable claim of misrepresentation pursuant to R.C. 2307.77.

"* * *

■ "[T]here is no indication that appellee knowingly, or with reckless and utter disregard of the consequences, misrepresented its TROCAL roof with regard to its properties, or that appellee intended to mislead appellant by the representations made. * * * Appellants have, therefore, not shown that they have a sustainable claim of common-law misrepresentation." *Id.* at 295–296, 714 N.E.2d at 950–951.

We find that our reasoning in *Westfield* is applicable to the present case and that appellant failed to produce sufficient evidence to support its misrepresentation claims. Therefore, the trial court did not err when it granted appellee's motion for summary judgment concerning these causes of action. Because of our finding, we do not need to address whether appellant's fraud claims were timely filed pursuant to the four-year statute of limitations rule found in R.C. 2305.09. Accordingly, appellant's assignment of error is sustained in part and overruled in part.

Appellee has filed a cross-appeal to the trial court's decision. In its cross-appeal, appellee presents the following three assignments of error:

"I. The trial court should have ruled that Federal's claims are barred, as a matter of law, by the doctrine of assumption of the risk.

"II. The trial court should have ruled that, as a matter of law, HPG's alleged failure to warn was not the proximate cause of any losses.

"III. The trial court should have ruled that Federal's claims are barred, as a matter of law, by the terms and conditions of the warranty."

In its assignments of error, appellee does not challenge the trial court's judgment, but, instead, defends the trial court's decision on grounds other than that relied upon by the trial court. See App.R. 3(C)(2). Appellee argues in its first cross-assignment of error that the trial court should have granted summary judgment because "Huntington impliedly assumed the risk that the roof could

fail." Appellee's argument is based upon its contention that Huntington knew that the roof could shatter before it actually shattered.

■ We addressed the issue of whether appellant was aware of the possibility of the roof's shattering in appellant's assignment of error when we discussed whether the statute of limitations barred appellant's claims. We found that summary judgment was improper if it was based upon a finding that Huntington knew about the shattering problem more than two years prior to the complaint's being filed because appellant presented sufficient evidence to show that there is a question of fact concerning this issue. We similarly hold that summary judgment was improper based upon a finding that Huntington voluntarily assumed the risk of the roof's shattering. Appellant has presented sufficient evidence to show that there is a question of fact concerning whether Huntington was aware of the shattering problem prior to January 19, 1997. Appellee's first cross-assignment of error is overruled.

■ Appellee argues in its second cross-assignment of error that summary judgment should have been granted because appellee's failure to warn was not the proximate cause of Huntington's alleged losses. In support of this cross-assignment of error, appellee argues that the "factual record presented to the trial court demonstrated, as a matter of law, that Huntington was unable to meet the proximate causation prong * * * because its losses were proximately caused by its failure to heed the repeated warnings of Bert Murvay, the person with direct responsibility for the roof, that the roof needed to be replaced." This argument is similar to appellee's argument that Huntington voluntarily assumed the risk of the roof's shattering. However, as previously stated, a review of the evidence shows that there is a question of fact as to whether Huntington was aware of the possibility that the roof could shatter.

Appellee also argues that even if Huntington had not been warned of the potential danger (that the roof might shatter), appellant had to prove that Huntington would have acted differently had a proper warning been given. As evidence that Huntington would not have acted differently, appellee claims that Murvay's "request for a new roof was rejected, despite the fact that Murvay had specifically told his superiors about the shattering phenomenon." However, a review of the record does not support appellee's interpretation of Murvay's deposition testimony, and, as stated previously, a review of the evidence shows that there is a question of fact as to whether Huntington was aware of the possibility that the roof could shatter. Appellee's second cross-assignment of error is overruled.

■ Appellee argues in its third cross-assignment of error that appellant's claims for consequential damages are barred by the terms and conditions of the

warranty purchased by Huntington. In support of its argument, appellee cites *Westfield*, 128 Ohio App.3d 270, 714 N.E.2d 934, claiming that "this Court's holding in *Westfield* mandated the grant of summary judgment on this issue" because "the warranty in *Westfield* and the Warranty at issue here are identical."

We first note that appellee's interpretation of our holding in *Westfield* is incorrect. When we held in *Westfield* that the insurance companies "had failed to prove that they had an action under the warranty," it was because of our finding that "the insurance companies who insured the tenants are not in privity with appellee in this respect and cannot bring action under the warranty." *Id.* at 294, 714 N.E.2d at 950. The present case is different from *Westfield*, in that appellant is in privity with Huntington, and it was Huntington's building (insured by appellant) that sustained damages allegedly caused by the defective Trocal roofing system.

Additionally, it is unclear whether appellee submitted as evidence a true copy of the Trocal roofing system warranty for the Huntington building. Appellant states in its appellate brief:

"A material issue of fact exists as to whether the 'warranty' on which [appellee] relies is applicable. [Appellee] has failed to produce a fully executed copy of the warranty. Mr. Murvay testified that the warranty [appellee] attempted to have him authenticate did not appear to be the correct warranty for the roof at the Operations Center. Mr. Murvay testified that the applicable roof warranty was materially different from the warranty produced by [appellee] and was not the same warranty which was in the possession of Huntington. * * * [Appellee] has not produced a fully executed copy of the allegedly applicable warranty, and has not produced the alleged warranty for the second five year period. Nor does [appellee] possess a signed copy of any warranty. * * * Consequently, a material factual issue exists as to whether the warranty produced by [appellee] controlled the relationship between Huntington and [appellee]."

A review of the record supports appellant's contention that there is a dispute among the parties concerning whether the warranty used by appellee in its motion for summary judgment is the same warranty that came with the Trocal roofing system when it was installed. When asked whether the warranty that appellee is relying upon was the same warranty agreed to by Huntington, Murvay stated: "No, sir. * * * [A] lot of things in here may have been in that document, but that 'warranty,' limited warranty or whatever that I considered to be the warranty of the roof was nothing like this. It had a lot of information that this doesn't have." Appellee's third cross-assignment of error is overruled.

Accordingly, we find that the trial court erred when it granted appellee's motion for summary judgment for appellant's claims based upon defective manufacture or construction pursuant to R.C. 2307.74, defective design and

formulation pursuant to R.C. 2307.75, strict liability for inadequate warning or instruction pursuant to R.C. 2307.76, and common-law negligent failure to warn. We also find that the trial court did not err when it sustained appellee's motion for summary judgment concerning appellant's claims of negligent misrepresentation and failure to conform to a manufacturer's representation pursuant to R.C. 2307.77. Therefore, we sustain in part and overrule in part appellant's assignment of error and overrule appellee's three cross-assignments of error. The decision of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings consistent with this opinion.

*Judgment accordingly.*

KENNEDY and BOWMAN, JJ., concur.