NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0045n.06

Case Nos. 21-3127/3158

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Jan 20, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| PANDORA DISTRIBUTION, LLC, | ) | |
| Plaintiff-Appellee/Cross-Appellant, | ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) ) | STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| OTTAWA OH, LLC, et al., | ) | |
| Defendant-Appellant/Cross-Appellee. | ) ) | OPINION |
| | ) | |

Before:  BATCHELDER, BUSH, and DAVIS, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.**  Railroad tracks separate two warehouses, one owned by Pandora Distribution, LLC, and the other owned by Ottawa OH, LLC.  A prior owner had obtained an easement and a license agreement with the Railroad to connect the two warehouses with overhead bridges that span the tracks.  But neither Pandora nor Ottawa believed it owned the bridges.  When Pandora sued Ottawa to compel it to remove the bridges, the district court found that Pandora owned the bridges, and it entered judgments based on that finding.  Because we find that Ottawa, not Pandora, owns the bridges, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings consistent with this opinion.

**I.**

Originally, Sylvania Electric Products, Inc., owned both warehouses as part of one large facility.  A railroad line on a 66-foot-wide strip of land bisected the property from north to south and separated the two warehouses, one of which is on the east side of the tracks and the other on the west.  In 1970, the Railroad sold Sylvania an easement (over and across the 66-foot-wide strip)

to construct, use, and maintain an overhead bridge between the two warehouses. In 1986, the Railroad provided Philips ECG, Inc. (Sylvania's successor) a license for a second overhead bridge.

In 2005, Philips sold the entire facility to DBI Partners, "as is," without caveat or limitation. This included all the real property, personal property thereon, and attendant property rights and obligations. There was no specific mention of the bridges, the 1970 Easement, or the 1986 License.

In January 2006, Pandora purchased the warehouse property on the east side of the Railroad strip (the "Pandora Property"). DBI and Pandora executed an "Encroachment Agreement," recorded with the Pandora Property deed in the County Recorder's Office, which says: (1) the two bridges "shall remain the sole property of DBI"; (2) DBI was responsible for maintaining the bridges; and (3) Pandora could demand DBI remove the bridges and repair any resulting damage to the Pandora Property, but DBI could remove them only with Pandora's prior written consent.

In December 2006, Ottawa purchased the warehouse property on the west side of the Railroad strip (the "Ottawa Property"). Ottawa bought the property and everything on it "as is," without caveat or limitation. So, unlike Pandora's purchase from DBI, there was no agreement concerning ownership or removal of the bridges. The Encroachment Agreement between DBI and Pandora had not been recorded for Ottawa's parcel (but only for the Pandora Property), so it did not appear on the title search, but Ottawa admits that it had actual knowledge of the bridges.

The same title agent assisted with DBI's purchase from Philips in 2005, and then with DBI's sales to Pandora and Ottawa in 2006. For each transaction, the agent issued title insurance commitments and policies underwritten by First American Title Insurance Company.

In 2007, Pandora demanded that Ottawa, as the successor to the Encroachment Agreement, repair the bridges. Ottawa denied responsibility and refused. In 2012, Pandora sued Ottawa and DBI in federal court under diversity jurisdiction, raising claims under Ohio law. Pandora obtained

a default judgment against DBI. Meanwhile, Ottawa counterclaimed, crossclaimed against DBI, and filed a third-party complaint against First American, Philips, and the Railroad. Pandora amended its complaint to add Philips. And First American counterclaimed against Ottawa.

Ultimately, Pandora's claims against Ottawa were for breach of contract for failure to remove the bridges pursuant to the Encroachment Agreement; trespass and nuisance based on Ottawa's alleged ownership of the bridges; declaratory judgment regarding bridge ownership; quiet title and ejectment; and an unspecified remedy in equity, should legal relief be unavailable. Pandora's claims against Philips were based on Philips's promises to the Railroad—in the 1970 Easement and 1986 License—to remove the bridges when it stopped using them.

Ottawa's counterclaims against Pandora were for negligence, trespass, nuisance, mutual mistake, and declaratory judgment. Ottawa argued that Pandora purchased the bridges,[1] that Ottawa was the victim of a trespass and nuisance, and that it was not bound by the Encroachment Agreement. Ottawa's claims against Philips and the Railroad were that they had owned the bridges and were therefore responsible. Its claims against First American were based on the title insurance.

When all parties moved for summary judgment, the district court determined that Pandora owned the bridges and entered judgment on all claims except Ottawa's claims against Pandora for negligence, trespass, and nuisance. *Pandora Distrib., LLC v. Ottawa OH, LLC*, No. 3:12-cv-2858, 2019 WL 2924995 (N.D. Ohio July 8, 2019). Pandora and Ottawa each moved for reconsideration, which the district court denied. *Pandora Distrib., LLC v. Ottawa OH, LLC*, No. 3:12-cv-2858, 2019 WL 5729932 (N.D. Ohio Nov. 5, 2019); *Pandora Distrib., LLC v. Ottawa OH, LLC*, No.

---

[1] Ottawa quickly reversed its position. Beginning with its first motion for reconsideration and continuing through this appeal, Ottawa's revised position is that Pandora did *not* purchase and *does not own* the bridges.

3

3:12-cv-2858, 2020 WL 5593205 (N.D. Ohio Sept. 18, 2020). Ottawa dismissed its remaining claims, and the district court closed the case. Ottawa appealed and Pandora cross appealed.

**II.**

When the district court grants summary judgment, our review is de novo. *Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, 954 F.3d 852, 859 (6th Cir. 2020). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Just like the district court, we view the evidence "in a light most favorable to the [nonmoving] party . . . , giving that party the benefit of all reasonable inferences." *Baker v. City of Trenton*, 936 F.3d 523, 529 (6th Cir. 2019).

The district court's rulings on the numerous and varied legal claims all flowed from a single underlying determination: that Pandora alone owns the bridges. The court began by finding that the bridges are fixtures or appurtenances and, therefore, real property. Under Ohio law, "[i]n a conveyance of real estate . . . , all . . . appurtenances belonging to the granted estate shall be included in the conveyance, unless the contrary is stated in the deed, and it is unnecessary to enumerate or mention them either generally or specifically." O.R.C. § 5302.04. Because the deed for the Pandora Property did not expressly except or exclude the bridges, the court held that Pandora bought the bridges from DBI. Pandora and Ottawa argued that the deed's silence about the bridges could not overcome the Encroachment Agreement, but the court rejected that argument on the basis that the Encroachment Agreement was not in the deed.

We disagree with the district court's determination and find instead that the bridges are not real property and Pandora does not own them. The bridges are personal property and Ottawa owns them. Under Ohio law, the most important requirement for an article to become a real property fixture is that it must be "a *permanent* accession to the freehold." *Teaff v. Hewitt*, 1 Ohio St. 511,

530 (Ohio 1853) (emphasis added). In *Wireman v. Keneco Distributors, Inc.*, 661 N.E.2d 744, 747 (Ohio 1996), the Ohio Supreme Court relied on *Teaff* to find that a vapor recovery system (VRS) was not a fixture, but was instead personal property, because "there was never an intention to make the VRS a permanent accession to the freehold where it was being used." A provision in the purchase agreement "obligat[ed] [the buyer] to remove the aboveground storage tanks if removal is required by law. Thus, [the seller] never intended that those tanks and attached VRS be a permanent part of the premises where they rested." *Id.* The same goes for the bridges here.

A provision in the 1970 Easement caused it to terminate automatically if the grantee (Sylvania) stopped using the bridge, whereupon the grantee was obligated to remove the bridge. Likewise, the 1986 License provided that either party could terminate the agreement on 60 days' notice, whereupon the licensee (Philips) was required to remove the bridges. Both agreements anticipated and expressly mandated the removal of the bridges when the grantee/licensee stopped using them, demonstrating that these bridges were not intended to be permanent. They are not real-property fixtures. *See, contra, Dee Cee Assocs. v. Norfolk & W. Ry. Co.*, No. H-90-16, 1991 WL 156538, at *2-3 (Ohio Ct. App. Aug. 16, 1991) (applying *Teaff* to find that a bridge was a fixture because it "could [not] be removed at [one party's] discretion . . . at some future time").

Neither are they appurtenances. Under Ohio law, an appurtenance is "that which belongs to something else; . . . [a]n article adapted to the use of the property to which it is connected, and which was intended to be a permanent accession to the freehold." *Mid-Ohio Mech., Inc. v. Carden Metal Fabricators, Inc.*, 862 N.E.2d 543, 548 (Ohio Ct. App. 2006) (quoting Black's Law Dictionary 94 (5th Ed. 1979)); *accord BND Rentals, Inc. v. Dayton Power & Light Co.*, 158 N.E.3d 993, 1003 (Ohio Ct. App. 2020). As just explained, theses bridges were never intended to be

permanent. Moreover, the bridges are not affixed to any one property but rather connect both properties through the Railroad's airspace and do not belong exclusively to any property.

We therefore conclude that the bridges are personal property. So, to determine who owns them, we do not look to Ohio Revised Code § 5302.04, which applies to appurtenances to real property. Nor could the bridges pass by deed as fixtures. In this situation, we look to the sales contracts to determine who purchased this personal property from DBI. Although the contract between DBI and Pandora says that Pandora "hereby agrees to purchase . . . all furnishings, fixtures, equipment, and other personal property," the Encroachment Agreement says the bridges "shall remain the sole property of DBI." Because the specific trumps the general, Pandora did not purchase the bridges. Ottawa, however, agreed to purchase "[a]ll furnishings, fixtures, equipment, and other personal property . . . contained in or related to the Land or Project and owned by [DBI]."

We hold that Ottawa owns the bridges. Pandora does not.

**III.**

Pandora argues that the district court erred by granting summary judgment to Ottawa on Pandora's claims. The court did so based on its determination that Pandora and not Ottawa owned the bridges, which was incorrect. Ottawa owns the bridges. Therefore, we reverse the judgments on all but the claim of breach of the Encroachment Agreement.

Ottawa was not a party to the Encroachment Agreement. For that agreement to bind Ottawa, it would have to be a covenant that runs with the land. *See Orwell Natural Gas Co. v. Fredon Corp.*, 30 N.E.3d 977, 982 (Ohio Ct. App. 2015). "In order for a restrictive covenant to run with the land, the following three factors must be met: (1) intent for the restrictive covenant to run with the land; (2) 'touches and concerns' the land; and (3) the parties are in privity of contract." *BM-Clarence Cardwell, Inc. v. Cocca Dev. Ltd.*, 65 N.E.3d 829, 835 (Ohio Ct. App. 2016).

Because the bridges are personal property, the Encroachment Agreement about the bridges does not touch and concern the land. And because Ottawa has no obligation under the Encroachment Agreement, Pandora has no claim against Ottawa for breach of that agreement.

As to Pandora's other claims, the district court may consider them on remand.

**IV.**

Ottawa argues that the district court erred by granting summary judgment to First American, the Railroad, and Philips. None of Ottawa's arguments has merit.

**A.**

The district court granted summary judgment to First American on all of Ottawa's claims. On the coverage claims (i.e., breach of contract and declaratory judgment), the district court found that while "First American provided Ottawa with a title insurance policy, [] Ottawa offers no evidence there is anything wrong with its title," or that the existence of the bridges is "a matter covered by the title insurance policy." *Pandora*, 2019 WL 2924995, at *8. On the negligence and fiduciary-duty claims, the district court found that "Ottawa fails to establish First American breached any duty it may have had to Ottawa, or that Ottawa suffered any damage as a result of any hypothetical breach." *Id*. And on the fraud and bad-faith claims, "Ottawa fails to identify facts to support its fraud and bad faith claims against First American." *Id*.

In its motion to reconsider, Ottawa argued that First American had a duty to defend Ottawa in this litigation, that First American committed fraud ("participat[ed] in a constructive fraud scheme") against Ottawa, and that the district court erred in finding otherwise. *Pandora*, 2019 WL 5729932, at *8. The district court rejected this claim, explaining that:

> The contract between Ottawa and First American goes on to state, in a schedule titled EXCEPTIONS FROM COVERAGE, [that] it does not insure against loss or damage (and First American will not pay costs, attorneys' fees[,] or expenses) which arise by reason of a License Agreement between Grand Trunk Western

> Railroad Company and Philips ECG, Inc., dated December 18, 1986, relating to the elevated conveyor bridge and [that there is] an encroachment by an existing overhead bridge conveyor onto the premises in question.

*Id*. at *9 (quotation and editorial marks omitted). Therefore, the policy alerted Ottawa to the existence of the bridges and the 1986 License (which was attached), and expressly excluded coverage for claims arising from or based on the bridges. *Id.* The court characterized Ottawa's fraud theory as Ottawa's "concocting an elaborate story." *Id.*

On appeal, Ottawa continues to press its fraud theory. Certain indisputable facts resolve this claim. One, prior to its purchase of the warehouse, Ottawa had actual notice of the physical existence of the bridges, which connected the east wall of that warehouse to the west wall of the Pandora Property's warehouse across the Railroad tracks and property. Two, Ottawa had a copy of the 1986 License, which stated the building owner's commitment concerning lease, repair, and removal of the second bridge, and depicted both bridges on its attached plat. And three, the First American policy excluded coverage for claims arising from or based on the bridges.

Ottawa chose to purchase the property despite its knowledge of the bridges and First American's express exclusion of those bridges from its title insurance policy. First American owed no duty to Ottawa regarding the bridges, so Ottawa cannot establish that First American breached any duty, committed any negligence, or improperly denied coverage. The district court correctly granted summary judgment to First American on Ottawa's claims. We affirm.

**B.**

The district court granted summary judgment to the Railroad upon finding that, while the Railroad could have compelled Philips to remove the bridges pursuant to the 1970 Easement and the 1986 License, it owed no duty to Ottawa. *Pandora*, 2019 WL 2924995, at *8. Moreover, the Railroad had no responsibility for maintaining or removing the bridges. *Id*. at *9.

On appeal, Ottawa claims that the Railroad owns the bridges because the 1970 Easement and 1986 License have ended, both required removal of the bridges when they ended, and fixtures become the property of the landlord if the tenant fails to remove them before the lease expires. Suffice it to say that the bridges are not fixtures, but more importantly, they are not fixtures attached to the Railroad's property. Nor was the Railroad anyone's landlord.

Ottawa also argues that the Railroad's failure to remove the bridges was negligence because it was foreseeable that someone could be harmed if the bridges were not removed, as demonstrated by the provisions in the Easement and License requiring removal. But foreseeability alone does not establish negligence. The first element of negligence is duty. *See Snay v. Burr*, 189 N.E.3d 758, 762 (Ohio 2021). And the Railroad had no duty to remove the bridges.

More to the point, the Railroad owed no duty to Ottawa, the purchaser and owner of those bridges. This argument is frivolous. We affirm the district court's judgment on this claim.

**C.**

The district court found that Philips sold the entire property to DBI, including all rights, interests, and obligations. *Pandora*, 2019 WL 2924995, at *9. Thus, any obligation—such as an obligation to remove the bridges per the 1970 Easement or the 1986 License—is DBI's obligation, not Philips's. *Id.* And the court found that Philips owed Ottawa no duty.

On appeal, Ottawa argues that Philips's failure to remove the bridges was negligence because it was foreseeable that someone could be harmed if the bridges were not removed, as demonstrated by the provisions in the Easement and License requiring removal.

As with the claim against the Railroad, above, this argument is frivolous. Philips has no responsibility for the bridges. We affirm the district court's judgment on this claim.

**V.**

For the forgoing reasons, we AFFIRM in part and REVERSE in part the judgments of the district court, and REMAND for further proceedings consistent with this opinion.